IN RE FARLEY DRAINAGE DISTRICT No. 7, WILLIAM PAB-
BELDT, Appellant, v. HAMILTON COUNTY, THE BOARD
OF SUPERVISORS, of said County, COUNTY AUDITOR
AND FARLEY DRAINAGE DISTRICT No. 7, Appellees.

**Drainage:** REPORT OF APPRAISERS: TIME FOR FILING. Appraisers ap-
pointed by a board of supervisors to inspect and classify lands
within a drainage district, while required to make the inspection
and classification within twenty days from the date of their ap-
pointment, are not required to file their report within that time,
but must do so within a reasonable time after appointment, to
confer jurisdiction upon the board to proceed; and objection to
the filing of the report must be made before the board of super-
visors and in the district court; it can not be raised for the first
time in the Supreme Court, unless the objection goes to the
right of the board to act at all. In the instant case the report
filed four months after the appointment of the appraisers is held
to have been within a reasonable time.

**Drainage:** CLASSIFICATION: ASSESSMENT: METHOD. An objection to the
report of the appraisers that the classification and assessment
of lands was not made in the manner contemplated by the stat-
ute cannot be raised for the first time in the Supreme Court;
however, the method of classification and assessment followed in
the instant case is considered and approved, as being in substan-
tial conformity with the statute.

**Same:** EVIDENCE. The evidence in this case is reviewed and while
in conflict is held insufficient to show that certain assessments
were in excess of the benefits; or that they were inequitable as
compared with other lands in the district.

*Appeal from Hamilton District Court.*—HON. W. D.
EVANS, Judge.

WEDNESDAY, NOVEMBER 17, 1909.

APPEAL from an order and decree of the district
court confirming a drainage tax or assessment upon each
of fifteen different forty-acre tracts of land belonging to

plaintiff situated in Hamilton County, Iowa, and being within what is known as "Farley Drainage District No. 7."—*Affirmed.*

*Wesley Martin,* for appellant.

*J. M. Blake* and *D. C. Chase,* for appellees.

DEEMER, J.—What is known as "Farley drainage district No. 7," in Hamilton County, Iowa, was duly and legally established by the board of supervisors of said county under what is called the "new law," being chapter 68 of the Acts of the Thirtieth General Assembly, with amendments. This district is in the northeastern part of the county, and includes the greater portions of Blairsburg and Williams townships. The ditch starts about one mile north of the village of Blairsburg, and runs in a northeasterly course for the distance of about thirteen miles. It passes through a large area of land which is low, wet and swampy, with no natural channels for the discharge of surface water. Appellant, Pabbeldt, is the owner of fifteen forty-acre tracts of land within said district. The benefit appraisers assessed said lands as follows:

| Name. | Description. | Sec. | Twp. | Range. | Acres. | Assessment. |
|-------|-------------|------|------|--------|--------|-------------|
| Wm. Pabbeldt | SW. NW. | 3 | 89 | 23 | 39 | $38 80 |
| " | SE. NW. | 3 | 89 | 23 | 38 | 6 60 |
| " | NE. SW. | 3 | 89 | 23 | 38 | 3 80 |
| " | NW. SW. | 3 | 89 | 23 | 39 | 81 40 |
| " | SW. NE. | 4 | 89 | 23 | 40 | 71 40 |
| " | SE. NE. | 4 | 89 | 23 | 40 | 62 00 |
| " | NE. SE. | 4 | 89 | 23 | 40 | 45 80 |
| " | NE. SW. | 6 | 89 | 23 | 40 | 106 20 |
| " | NW. SW. | 6 | 89 | 23 | 42 | 98 20 |
| " | SW. SW. | 6 | 89 | 23 | 42 | 113 40 |
| " | SE. SW. | 6 | 89 | 23 | 39 | 117 00 |
| " | NE. NE. | 12 | 89 | 23 | 38 | 124 60 |
| " | NW. NE. | 12 | 89 | 24 | 39 | 66 80 |
| " | SW. NE. | 12 | 89 | 24 | 40 | 49 20 |
| " | SE. NE. | 12 | 89 | 24 | 39 | 134 00 |

Total footing of assessment.........................$32,227 00

Appellant appeared before the board and filed objections to each of said assessments upon the following grounds: (1) That each assessment is too large and inequitable and unjust both in fact and as compared with other lands in the district; (2) as to some of the forty's that they did not drain and could not be drained into the ditch, and the assessments thereon were excessive; and (3) that each and all of the assessments were unjust and inequitable both in fact and as compared with the assessments of other lands. The matter was heard before the board upon these objections, and the assessments were each and all confirmed and established, save upon two separate forty-acre tracts, one of which was reduced from $98.20 to $25, and the other from $106.20 to $25. Pabbeldt thereupon appealed to the district court, and upon hearing in that court the action of the board of supervisors was affirmed and confirmed. The appeal here is from the action of the district court. For a reversal counsel insist upon the following propositions: (1) That, as the benefit appraisers did not file their report of assessment within twenty days, the board of supervisors lost jurisdiction, and its assessment is void; (2) that each of the assessments was and is largely in excess of the benefits and should be reduced; (3) that the method of classification adopted in this case was arbitrary, and not in accord with the statute, and therefore void; and (4) that the assessments were each and all excessive, illegal, and unjust, and should be reduced. The first and third points do not seem to have been made in the objections filed before the board of supervisors.

It is provided in the drainage act that, when the drainage district shall have been located and established:

The board shall appoint three commissioners, one of whom shall be a competent civil engineer and two of whom shall be resident freeholders of the county, not living within the levee or drainage district and not interested there-

in or in a like question nor related to any party whose
land is affected thereby; and they shall within twenty days
after such appointment personally inspect and classify. all
the lands benefited by the location and construction of
such levee or drainage district, or the repairing or re-
opening of the same, in tracts of forty acres or less accord-
ing to the legal or recognized subdivisions in a graduated
scale of benefits, to be numbered according to the benefit
to be received by the proposed improvement; and they
shall make an equitable apportionment of the costs, ex-
penses, costs of construction, fees and damages assessed for
the construction of any such improvement, . . . and
make report thereof in writing to the board of supervisors.
In making the said estimate the lands receiving the
greatest benefit shall be marked on a scale of one hundred
and those benefited in a less degree shall be marked with
such percentage of one hundred as the benefit received
bears in proportion thereto.    This classification when fin-
ally established shall remain as a basis for all future as-
sessments connected with the objects of said levee or drain-
age district, unless the board, for good cause, shall au-
thorize a revision thereof.    In the report of the appraisers
so appointed, they shall specify each tract of land by
proper description and the ownership thereof as the same
appears on the transfer books in the auditor's office and
the auditor shall cause notice to be served upon each per-
son whose name appears as owner and also upon the per-
son or persons in actual occupancy of any of such land in
the time and manner provided for the establishment of a
levee or drainage district, which notice shall state the
amount of special assessments apportioned to such owner,
upon each tract or lot, the day set for hearing the same
before the board of supervisors and that all objections
thereto must be made in writing and filed with the county
auditor on or before noon of the day set for such hearing.
When the day set for hearing shall have arrived, the board
of supervisors shall proceed to hear and determine all ob-
jections made and filed to said report and may increase,
diminish, annul or affirm the apportionment made in said
report or in any part thereof as may appear to the board
to be just and equitable; but in no case shall it be com-
petent to show that the lands assessed would not be bene-

fited by the improvement, and when such hearing shall have been had the board shall assess such apportionment so fixed by it upon the lands within such levee or drainage district.

See section 1989a12, Code Supp. 1907.

It is also provided in section 1989a14: "An appeal may be taken to the district court from the order of the board fixing the assessment of benefits upon the lands in the same manner and time as herein provided for appeals from ·the assessment of damages. The appeal herein provided for shall be tried in the district court as an action in equity and the appearance term shall be the trial term."

It will be observed from a reading of these sections that no time is fixed within which the appraisers shall make their report. They are to personally inspect and classify the lands within· twenty days after

1. DRAINAGE: report of appraisers: time for filing.

their appointment and make report thereof in writing. There is no time fixed for the filing of this report and failure to file within twenty days, or any other given time, does not deprive the board of jurisdiction. Upon the filing of the report the auditor gives notice thereof and of the time set for hearing to all parties in interest, and at the time so fixed the board proceeds to hear all objections made and filed to the report. Such a report is not like that of a referee appointed by the court, and, as it is not required to be filed within any given time, it can not be said that the board in this case lost jurisdiction because the report was not filed within twenty days. It is true, as shown by the record, that the commission issued to the appraisers on March 6, 1906, and that they did not make their report until July 6, 1906; but this was not such an unreasonable time as to deprive the board of jurisdiction, nor was it such a delay as would have been a valid ground of objection had it· been made before the board. However, as

this point was not made before the board or in the district court, it can not, unless it go to the right of the board to act at all, be considered on this appeal.

II. No objection to the classification was made by appellant either before the board or in the district court, and this matter can not be presented here for the first time. However, it is shown that the appraisers proceeded under section 1989a12, already quoted. It seems that they went to each forty acres in the district and separated the lands according to quality; that is, as swamp land, wet and low land, and high land, they then used a certain percent for the different qualities, i. e., one hundred percent for swamp, seventy percent for wet, thirty percent for low, and for high land one percent. As one witness said, if there were three acres of swamp land, this would be three hundred units; and ten acres of low land would be seven hundred units. We added the several tracts together, and that gave us the number of units by multiplying on each forty. All these forty's were made up on that basis. He then said that, after the product on each forty was obtained, they arrived at the assessment against each forty as follows: "All according to the distance from the ditch. We started with the first eighty. That will be one hundred percent, the next eighty would be eighty percent, the next sixty percent, and forty percent, and on down to as low as five percent, according to the distance from the ditch. The same rule was followed with regard to all of the forty's in this district." This witness also testified as follows: "I remember the Pabbeldt land, being the S. W. ¼ of section six. Q. Was there any different rule followed in regard to making up the units to assess these forty's in that quarter than that pursued in other lands? A. No, sir. Q. Did you, as one of the commissioners, recommend a reduction on two of the forty's in that quarter section different from what the original assessment

*2. Drainage: classification: assessment: method.*

was? A. Yes, sir; I did for certain reasons." Witness also testified as follows: "Q. After finding how much each forty would be assessed, what did you do? A. We multiplied the different units in each forty by twenty. Q. So these assessments were arrived at by a mathematical calculation after you had determined what was swamp, wet, low, or high land on each forty by an actual inspection? A. In each forty, in each fractional part. Q. Did you take into consideration the proximity of the land to the ditch, as well as the quantity and quality of the land in making up these units? A. We did." We do not regard this as an arbitrary assessment, or as any substantial departure from the requirements of the statute. Indeed, the method used seems to be in accord with the terms of the statute. However, as applicant made no question of this kind before the board and filed no such objections when the cause was in the district court, we do not think that he can now be heard to challenge the method pursued.

III. This leaves but two matters for our consideration, and these are: First, are the assessments largely in excess of the benefits conferred? And, second, are they inequitable or unjust in fact or as compared with other lands within the district? These are purely fact questions, which have been determined adversely to appellant by two tribunals, in addition to the appraisers appointed for the purpose. Appellant introduced some four or five witnesses who gave testimony in support of his own claims, while on the witness stand, to the effect: That some of the forty's were not benefited at all by the construction of the ditch, for the reason that they could not be drained so that the water would run into the proposed ditch; that only part of the lands in other forty's could be so drained; that some of the forty's were so far away that they could not be drained into the ditch, and therefore received no benefit; and that other lands

*3. SAME: evidence.*

equally benefited were not assessed proportionately. Some of the witnesses were related to Pabbeldt and others were indirectly interested in the result of the action. On the other hand, appellees introduced five or more disinterested witnesses, some of whom were expert engineers, who gave an entirely different version of the matter. This conflict is due to a difference of opinion regarding the amount of appellant's land which can be drained into the ditch. Appellant's witnesses gave testimony on the theory that much of it could not be so drained; but the better testimony in the case shows that this is a mistake, and that all, or the greater part, of every forty-acre tract could be so drained. This being true, the testimony given by appellant's witnesses is of little value. By turning to the assessment it will be noticed that some of the lands in section three were assessed as low as $3.80 and $6.60 upon each forty, and that the board of supervisors reduced the assessment on certain forty's in section 6 from $98.20 and $106.20, respectively, to $25 on each forty. This was due to the fact that some of the lands in these sections were not benefited as much as other lands, or to the fact that the better part of the land in some of the forty-acre tracts received no benefit. No unjust discrimination is shown in the testimony. Indeed, the contrary affirmatively appears.

We have gone over the record with care and found no reason for disturbing the order and judgment of the district court, and they are therefore *affirmed*.

EVANS, C. J., took no part.