A. B. KELLEY, Executor of the Estate of James D. Kelley,
Deceased, Appellant, v. DRAINAGE DISTRICT No. 60 IN
GREENE COUNTY, IOWA, and THE BOARD OF SUPERVISORS
OF GREENE COUNTY, IOWA.

**Drainage:** ESTABLISHMENT OF DISTRICT: DESCRIPTION OF TERRITORY.
1 The petition for the establishment of a drainage district should
describe the land to be included by metes and bounds, or other-
wise, so as to convey an intelligent description of such lands.
Where however, the petition adopted the description contained in the
petition for the establishment of another district covering the same
territory, so that the engineer was able to ascertain the lands in-
tended, the description was not so defective as to render subsequent
proceedings void.

**Same:** TERRITORY INCLUDED. A new drainage district may be established
2 covering precisely the same territory as one previously organized, for
the purpose of enlarging the outlet and making the system more
efficient.

**Same:** REPORT OF ENGINEER: SURVEY. Where the engineer in charge of
3 the establishment of a new drainage district, embracing the same ter-
ritory as one previously established, had his field notes of the orig-
inal survey and the plat then returned with his report, a new survey
was not necessary, and a report accompanied by the plat of the pre-
vious survey, with lines clearly indicating the route of the new drains,
though irregular, was sufficient.

**Same:** PLAN OF IMPROVEMENT: REPORT OF ENGINEER. In the establish-
4 ment of a drainage district the supervisors are limited to the adop-
tion of the plan recommended by the engineer as practicable and
likely to be efficient, and before ordering the improvement it must
conform substantially with the plan as recommended.

**Same:** REPORT OF ENGINEER: OMISSION OF DESCRIPTIONS. The fact
5 that the report of the engineer, in the formation of a new district
embracing an old one, omitted a description of the several tracts in-
cluded and the names of the owners, was not a jurisdictional defect;
and as appellant appeared in resistance to the establishment of
the district and to challenge the assessments, the omissions were not
prejudicial.

**Same:** NOTICE OF HEARING: SERVICE. Where the board in fact approved the plan of drainage recommended by the engineer, the fact that notice of the hearing on the petition and claims for damages was served prior to the adoption of the plan was not fatal to the proceedings.

**Same:** ASSESSMENT: WAIVER OF REMEDIES. Failure of a landowner, who was made a party to the proceedings for the establishment of a drainage district, to appeal from the action of the board in making an assessment is a waiver of all other remedies.

**Same:** BENEFITS: ASSESSMENTS: EVIDENCE. The establishment of a drainage district involves a determination of the fact that all lands embraced therein will be benefitted to some extent, and this question will not be reconsidered in levying the assessments; and evidence of no benefit is incompetent on the question of the excessive character of the assessments. In this case the new drains furnished an additional outlet and were of benefit to all lands tributary thereto, even though they did not touch some of the lands.

**Same:** CLASSIFICATION AND ASSESSMENT OF LANDS. Slight variance from the method prescribed for the classification and assessment of lands will be treated as immaterial, unless prejudice results.

*Appeal from Green District Court.*—HON. M. E. HUTCHINSON, Judge.

THURSDAY, DECEMBER 12, 1912.

APPEAL by the executors of the estate of James D. Kelley, deceased, from assessments for drainage improvements resulted in the approval of such assessments as made by the board of supervisors. The executor appeals.—*Affirmed.*

*W. W. Turner,* and *J. A. Henderson,* for appellant.

*Wilson & Albert,* for appellees.

LADD, J.—Drainage district No. 3, containing twenty-four forty-acre tracts situated in sections 3, 4, 9 and 10, in township 83 north, of range 29 west, of the 5th P. M., in Greene

county, Iowa, was established, and the improvement contemplated was completed in 1906.  On May 26, 1909, the members of the town council of Grand Junction and many others, after calling attention to the insufficiency of the improvement, and declaring that it did not carry off the water or adequately drain a part of Grand Junction, prayed the board of supervisors of Greene county to give the matter consideration.  Thereupon the board directed the engineer who had planned said improvements to investigate, which he did, and in his report recommended that additional tile be laid to carry off the surplus water.  Later Geo. Rice and others filed a petition reciting that the improvement in district No. 3 had proved insufficient to drain the lands necessarily tributary, and requested the board for the establishment of a new drainage district;

Covering and including the said district No. three (3) and for the purpose of giving a description of the land in said district, and the character thereof, these petitioners make all the allegations in the original petition filed for the establishment of said district No. three (3) a part of this petition by reference, with the same effect as if copied and set out herein, and these petitioners ask that a new tile ditch or drain be laid or constructed in said district, commencing at the line of the present tile drain therein, and connecting with the same at a point at or about twenty-five rods south of the center of section four (4), township eighty-three (83) north, of range twenty-nine (29) west of the 5th P. M., and extending thence in a general northeasterly direction, and following approximately the course of the tile drain now in and constructed under the proceedings in said district number three (3), at an average distance of about one hundred (100) feet north and west of the same across the east half of said section, and also across the northwest forty (40) acres of section three (3) in said township and range, and crossing the right of way of the Chicago & Northwestern Railway Company's right of way at a point about thirty-five rods east of the west line of said section three, and terminating and outletting in an open drain on the public highway immediately north of the point where the same is asked to cross said railway

right of way, the same to follow in general and approximately the course of the natural drainage over the land to be crossed thereby, as may be found most practicable by the engineer in charge, also to connect at the upper end thereof with such branch or branches of the said improvement now in and forming a part of said district number three as may by such engineer be found most practicable for the bettering of the outlet of said drainage district number three and rendering the same sufficient to protect and drain in lands therein and tributary to said improvement.

This petition was accompanied by bond in proper form and duly approved, and Geo. M. Thompson was appointed engineer to act on the same. On October 22, 1909, the engineer filed his report, reciting therein that he had inspected the land to be affected by the proposed improvement, and that, as he had made the survey and superintended the construction of the improvements in drainage district No. 3, was in possession of the field book and plat of said district, and other matters not necessary to be repeated, recommended that a drain be constructed substantially as described in the petition. A plat of drainage district No. 3 was made a part of the report, and ''the line of the new drains that I recommended to be constructed is shown by a line of red dots, and run parallel to sections 10, 4, and 5A of drainage District No. three (3) as will be seen from an examination of the plat.''

Then follows a specific description of four sections of the improvement, one being an open ditch and the others of 14, 18, and 20 inch tile, all at the estimated expense of $2,515.44. Were a plat before us, we might be able to understand the location of the tile drain and ditch as recommended, but we have nothing but a photograph of the plat, so dim as to be of no service whatever, save as indicating that much of the land has been platted into town lots, as disclosed by the report of the commissioners who assessed the expenses, including all costs against the several parcels of land. We

infer from the statements of counsel that the drainage district is bounded on the north approximately by the Chicago & Northwestern Railroad and on the west by the Minneapolis & St. Louis Railroad, these crossing at right angles in the town of Grand Junction. "The east boundary of the district is approximately the east line of section 4 and 9, except near the outlet two forties of section '3' are included. The south boundary of the east part of the district is approximately the center line of section 9, and the south boundary of the west part of the district is approximately Elizabeth street in South Grand Junction. The main line of district No. 3 started at the northeast corner of the district at about the Chicago & Northwestern right of way, and deflected to the west, and then approximately straight south past the center line of section 9 across the lands of Kelley and Scott, and to the land of Rebecca K. Herron. The appellant herein owns certain town lots in South Grand Junction and certain lots in the south of the district. Commencing at the aforesaid main line of the ditch on the N. E. ¼ of the S. E. ¼ of section 4," the drain "ran to the west and southwest and ended at the corporation . ⁚ . line which is the center line of said section." This last drain "was connected with an old tile drain in South Grand Junction." The engineer reported that this drain was insufficient to carry off the water from "where the town branch connected into the main," and he recommended that a tile drain entirely independent of drain No. 3 be constructed from the same outlet and parallel therewith to the junction "where the town branch came in and thence past the town branch and to the end at the east line of the corporation of the town approximately to where No. three (3) ends." No description of the several tracts of land contained in the district nor the names of the owners thereof as shown by the transfer books accompanied this report. On the same day the recommendation of the engineer was approved, and the county auditor directed to serve the necessary notice, and it was resolved "that said new drainage dis-

trict and enlargement of outlet of drainage district No. three (3) for the purpose of convenience and description be known and named as drainage district No. (60) sixty." Subsequently on January 3, 1910, the board of supervisors adopted a resolution covering all requirements, including those of section 1989-a1 of the Code Supplement, and thereafter commissioners were appointed to equitably apportion the costs and expenses, including the cost of construction, fees, and damages among the several tracts of land, and make report, which they did, and the improvement was constructed in pursuance of proceedings of which there is no complaint.

Appellants and others interposed objections to the establishment of drainage district No. 60, but, as no appeal was taken from the findings of the board of supervisors overruling these, only questions affecting the authority of the board to act and bearing on the assessments as made from which appeal was taken can be considered.

I. Appellant challenges the jurisdiction of the board of supervisors to entertain the application for and to order the improvement, for that (1) the law, as is said, does not authorize the establishment of a new drainage district of the same body of land which already constitutes a drainage district previously organized; (2) the petition was insufficient in not describing the district definitely; (3) the plan of the engineer had not been approved by the board when notice of the hearing of the petition and claims for damages was served; and (4) the report of the engineer was not in compliance with the statute.

The petition for the establishment of the district and the improvement merely referred to and adopted the descriptions contained in that for the establishment of drainage district

1. DRAINAGE: establishment of district: description of territory.

No. 3 of Greene county, and it is said this was not in compliance with section 1989-a2. All exacted by that statute is that the body or district of land to be included shall be "described by metes and bounds, or otherwise so as to con-

vey an intelligent description of such lands." The method
adopted is not to be commended, but it did point out a dis-
tinct body of land formerly set apart as a drainage district,
and precisely where a specific description of the several tracts
of land included therein might be definitely ascertained at
little inconvenience. The board of supervisors might well
have required the petitioners to specify directly the lands
proposed to be included, but, though the description was
objected to, this was not done, and we are not inclined to say
that a description which when followed up will enable an
engineer to ascertain precisely the lands intended is so defec-
tive as to render all subsequent proceedings illegal and void
for want of jurisdiction. See *In re Drainage District No. 3,
Hardin County,* 146 Iowa, 564.

II. Counsel contend, however, that a drainage district
may not be established covering precisely the same territory
2. SAME: terri-    as one previously organized. Nothing in the
tory included.    drainage laws expressly prohibits this, and
we think it specifically authorized by section 1989-a25 of the
Code Supplement, which reads:

If any levee, drainage district or improvement hereto-
fore established either by legal proceedings or by private
parties, or which may hereafter be established shall prove
insufficient to protect or drain all of the lands necessarily
tributary thereto, the board of supervisors, upon petition
therefor as for the establishment of an original levee or drain-
age district, shall have the power and authority to establish
a new levee or drainage district covering and including such
old district or improvement, together with any additional lands
deemed necessary; and whenever a new district shall be
established as contemplated in this section and the new
improvement shall extend into or along the former improve-
ment, the commissioners of classification and benefits shall
take into consideration the value of such old improvement
in the construction of the new improvement and credit the
same to the parties owning the old improvement as their
interests may appear.

The suggestion is that this is applicable only to the establishment of a district with territory additional to that of the existing district. The language employed will not bear this construction. "Any additional lands deemed necessary" may be included, but the new district is authorized whenever the existing drains "shall prove insufficient to protect or drain lands necessarily tributary thereto," and all these may be within the existing district. We are of opinion that the proceedings in controversy were authorized by the statute quoted.

It does not follow, however, that relief by way of supplying an adequate outlet for the existing district was not available under section 1989-a21 of the Code Supplement, which declares that, "whenever any levee or drainage district shall have been established and the improvement constructed as in this act provided, the same shall at all times be under the control and supervision of the board of supervisors and it shall be the duty of the board to keep the same in repair and for that purpose they may cause the same to be enlarged, reopened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby." Whether such enlargement of the outlet be effected by widening and deepening the existing ditch or excavating another parallel with it, or whether this be done by removing tile and replacing it by that of larger size, or by laying another tile drain parallel with that already laid, can make no difference, for, in either event, the result is the enlargement of the outlet which is here authorized, and the costs of which are to be assessed as subsequently directed in the same section. It is enough for the purposes of this case, however, that the proceedings were authorized by and in pursuance of the statute first quoted.

III.    The report of the engineer on which the improve-

ment was ordered by the board of supervisors was somewhat irregular. While he described the tile drains and ditch to be constructed with sufficient accuracy, the elevations "of all lakes, ponds and deep depressions" in the district were not stated, nor did he report "the description of each tract of land therein and the names of the owners thereof as shown by the transfer books in the auditor's office." But his report discloses that he was the engineer who made the report for the improvements by drainage district No. 3, that he still had the field notes of that survey and the plat then returned with his report. Being in possession of the very information required, there was no occasion for a resurvey of the district. Moreover, the purpose of forming the new district was the construction of tile drains and a ditch which would relieve the existing drainage system by affording an additional outlet, and, for this reason, a restatement of the elevations contained in the former report would have been of no advantage. The plat accompanying the report when drainage district No. 3 was organized with the location of the proposed additional drains indicated by red dots, clearly identifying the route, was returned with the report. It was necessary in order to render his report intelligible to indicate the relation of the new drain with that previously constructed, and, though somewhat informal, it furnished the board of supervisors with the necessary data in these respects to enable it to proceed with the performance of its duties in the matter of establishing the district and ordering the improvement. *Lyon v. Board,* 155 Iowa, 367. See section 1989-a16, Code Supp.

*3. SAME: report of engineer: survey.*

As insisted by appellant, the board of supervisors is limited to the adoption of a plan recommended by an engineer as practicable, desirable, and likely to be efficient for the purpose intended, and, before ordering an improvement, it must conform substantially with the plan recommended by an expert in such matters. *Zinser v. Board,* 137 Iowa, 660; *In re Nishnabotna River Improvement District No.* 2, 145 Iowa, 130;

*4. SAME: plan of improvement: report of engineer.*

*Hartshorn v. Wright Co.*, 142 Iowa, 72; *Pritchard v. Board*, 150 Iowa, 565; *Lyon v. Board*, 155 Iowa, 367; *Shaw v. Nelson*, 150, Iowa, 559. What was said in *Laurence v. Board*, 151 Iowa, 182, was not inconsistent with this conclusion, for there the engineer had recommended a ditch of a certain width and depth, on the theory that action of the water would widen and deepen it so as to render it adequate, and it was held competent for the board of supervisors to order the ditch excavated of sufficient width and depth therefor in the first instance. But no such question is involved here. The drains were ordered of capacity and at locations precisely as recommended.

The report entirely omitted the description of each tract included in the district and the names of the owners as exacted by section 1989-a2. The design of this requirement is to render certain the several tracts included in the district and furnish the names of the owners for the purposes of serving notice on them as prescribed in section 3, chapter 118, Acts 33d General Assembly. Probably the circumstance that the engineer never woke up to the fact that a new district was being formed explains the omission to include these matters in his report. The several tracts had been assessed for the construction of the former improvement, and he may have relied on the information to be derived from the proceedings in the establishment of drainage district No. 3, though there may have been transfer since. Be this as it may, we are not inclined to regard this feature of the report as jurisdictional, and, as appellant appeared both in resistance to the establishment of the district and to challenge the assessments, these omissions were entirely without prejudice.

5. SAME: report of engineer: omission of descriptions.

The objection with reference to the service of notice of the hearing of the petition and claims for damages prior to the adoption of the plan recommended by the engineer was disposed of adversely to appellant in *County Drains v. Long*, 151 Iowa, 47.

6. SAME: notice of hearing: service.

We have reviewed the proceedings leading up to the order directing the improvement in controversy in response to argument of counsel, and in doing so have construed the drainage statutes somewhat liberally, as required by section 1989-a46 of the Code Supplement, but as notice was given as required, and appellant appeared at the hearing of the petition, and did not appeal from the order of the board establishing the district directing that the improvement be made, our decision might well have rested on the provisions of that section declaring that:

7. SAME: assessments: waiver of remedies.

The collection of the assessments shall not be defeated, where the proper notices have been given, by reason of any defect in the proceedings occurring prior to the order of the board of supervisors locating and establishing the levee, ditch, drain or change of natural water course provided for in this act, but such order or orders shall be conclusive and final that all prior proceedings were regular and according to law unless they were appealed from. But if, upon appeal, the court shall deem it just and proper to release any person or modify his assessment or liability, it shall in no manner affect the rights or liability of any person other than the appellant; and the failure to appeal from the order of the board of supervisors of which complaint is made shall be a waiver of any illegality in the proceedings and the remedies provided for in this act shall exclude all other remedies.

This is tantamount to saying that the only remedy of an owner of lands contained therein made a party to the hearing on the petition for the establishment of the drainage district is by appeal to the district court, and a failure to avail himself of that remedy is waiver of all other remedies. It necessarily follows that the defects to which attention has been directed were waived by appellant, and cannot be considered in passing on this appeal from the assessments levied on the several parcels of land belonging to the estate.

The board of supervisors confirmed the assessments as

recommended by the commissioners appointed to make "an equitable apportionment of the costs, expenses, costs of con-

8. SAME: bene-
fits: assess-
ments: evi-
·dence.

struction, fees and damages assessed for the construction" of the improvement. The appeal is from this order, and the only bearing of much of the evidence was in tending to show that the improvement was of no benefit to some or all of the lots or parcels of land of the estate. Section 1989-a12 of the Code Supplement declares that "in no case shall it be competent to show that lands assessed would not be benefited by the improvement." This is for the reason that by including such lands in the district when established the board of supervisors necessarily found that such lands would be benefited by the improvement, and the matter will not be reconsidered in levying the assessments. For other grounds, see *Allerton v. Monona County,* 111 Iowa, 560; *Ross v. Board,* 128 Iowa, 427. The evidence in so far as it tended to show that no benefit would be or was derived from the improvement was incompetent, and it furnished little or no aid in the determination of whether the assessments were excessive. See *Camp v. City of Davenport,* 151 Iowa, 33, The new drains did relieve the main drain in the system as previously constructed by furnishing an additional outlet, and in this respect was of some benefit to all the lands tributary thereto, even though not as near to some of them as the existing main. Nor was the circumstance that it did not touch such lands a valid objection to the assessments, though appropriate for consideration in ascertaining the·benefits thereto. Section 1989-a13, Code Supplement.·

Slight variances from the method prescribed for the

9. SAME: classifi-
cation and as-
sessment of
lands.

classification and assessment of lands, unless prejudice result, are immaterial. *Hampe v. Hamilton County,* 146 Iowa, 280; *In re Seattle,* 54 Wash. 297 (103 Pac. 20).

What should be taken into account in doing so was pointed out in *Zinser v. Board,* 137 Iowa, 660, and even

though assessments exceeding benefits might be authorized by the Legislature, we are not inclined to the view that such was its intention in enacting the drainage laws of this state. *In re Jenison*, 145 Iowa, 215; *Pabbeldt v. Hamilton County*, 144 Iowa, 476. These decisions, though not considering the point, proceed on the theory that the statutes should be so construed. No personal liability is imposed, as in the statute construed in *Farwell v. Brick Mfg. Co.*, 97 Iowa, 286. See 25 Am. & Eng. Ency. of Law (2d Ed.) 1172; 14 Cyc. 1061; *Rolph v. City of Fargo*, 7 N. D. 640 (76 N. W. 242, 42 L. R. A. 646). But this question is not raised by the record before us. The assessments against the town lots range from a few cents up to $13.05, and, conceding the improvement to be of some benefit to each lot, it is impossible to deduce from this record that such amount is less and how much less than that assessed. Moreover, an examination of the record as a whole has convinced us that the improvement will prove of substantial benefit to the several lots and much more to the forty-acre tracts than the amounts levied against them. No useful purpose will be served by a review of the evidence, and for this reason we are content in announcing our conclusion without more particularly specifying the reasons which have led thereto

The judgment of the district court is *Affirmed*.