W. H. WOOD, Appellee, v. HONEY CREEK DRAINAGE & LEVEE DISTRICT No. 6, and BOARD OF SUPERVISORS, Appellants.

DRAINS: Apportionment of Cost—Power of Commissioners—Excluding Lands. Commissioners appointed to apportion the cost of a public drainage improvement are wholly without power to apportion the entire cost upon *part* of the lands within the district, on the theory that the remaining lands will receive no benefit from the improvement—a question conclusively settled by the establishment of the district. Nor has the board of supervisors any power to entertain such a report. Section 1989-a12, Code Supp., 1913.

*Appeal from Pottawattamie District Court.*—J. B. ROCKA-FELLOW, Judge.

WEDNESDAY, DECEMBER 13, 1916.

REHEARING DENIED TUESDAY, MAY 22, 1917.

APPEAL by defendants from a decree of the district court setting aside assessments against lands included in a drainage district.

*John P. Organ,* for appellants.

*W. S. Baird and Roadifer & Roadifer,* for appellee.

LADD, J.——The petition praying for the
DRAINS: appor- establishment of the drainage district, with
tionment of
cost: power of territory described substantially as subse-
commission-
ers: excluding quently included in that established, was
lands.
filed with the county auditor January 21,
1909. In pursuance thereof, an engineer was designated, and his report duly filed September 22d following: Another engineer, E. E. Spetman, was appointed to examine and report on the project and district proposed. His report was not filed until March 8, 1911. It recommended that the district be established as outlined in the former report, but suggested some changes in the improvements to be made. The board of supervisors, by appropriate resolution, approved this report, and on notice, such as required by Section 1989-a3, Code Supp., 1907, claims for damages were filed, appraisers appointed and their report made, and the damages to be allowed fixed by the board of supervisors, and, on the day fixed for final hearing, the improvements were ordered and the boundaries of the district defined. The contract was then let. Everything up to and including the making of the contract is conceded to have been regular in all respects. The board of supervisors then appointed three commissioners, one of whom was the engineer Spetman, to "make an equitable apportionment of the costs, expenses, and cost of construction, fees and damages assessed for the construction of any such improvement * * * and make report thereof in writing to the board of supervisors." In so doing, the commissioners omitted

nearly three fourths of the lands of the district, or, to be exact, 72 per cent thereof, saying that lands so omitted derived no benefit from the improvement to be made, and therefore should not share the burdens of constructing the dikes or excavating the ditches as proposed. Notice was given to all interested, as required, and, more than five days before the day set for hearing, plaintiff filed written objections to said report, asserting: (1) That the lands omitted should have been classified as benefited by the proposed improvements, and that it would be inequitable to impose all the burden upon other lands only; (2) that it would be inequitable to assess lands not benefited by the ditch to be excavated for the construction of the dike, or those not benefited by the dike for expenses involved in constructing the ditches, and that the commissioners confused the two and made no effort to separate the benefits to be derived from each as a basis for assessment; and (3) in any event, the assessments against his lands are inequitable as compared with those levied against other lands of the district, and should be reduced.

The board of supervisors reduced the assessments against the several tracts of plaintiff's land, but approved the omission of 72 per cent of the lands in the district from classification and the apportionment of costs and expenses. The evidence disclosed that the classification of lands according to benefits was with reference to those derived from both dike and ditches, and therefore the second objection was unfounded. The last objection will be disposed of by our conclusion with reference to the first.

After the establishment of a drainage district, under the provisions of Chapter 2-A, Title X, Code Supp., 1913, is the inquiry whether any land included therein will be benefited, open to the commissioners appointed to classify and assess such lands, or are they to assume that the lands will be benefited and classify and assess accordingly? At

the outset, the board of supervisors must determine whether such a proposed improvement will be conducive to the public health, convenience, utility and welfare, and, having so determined, its decision is not reviewable by the courts. *Denny v. Des Moines County,* 143 Iowa 466. But whether any particular tract of land is to be included in the district to be established, and bear its portion of the burden of making the improvement, is to be determined on due notice and opportunity afforded those interested therein to be heard. Sections 1989-a3, 1989-a4 and 1989-a5, Code Supp., 1913. Such burden may be imposed only when some special benefit is to be conferred, a benefit other than that to be enjoyed by the public generally,—a special benefit. And before the engineer may recommend that land be included in the district, or the board include the same, the engineer must find that in some way said land will be affected by the improvement proposed, and that its value will be enhanced thereby, either by relieving it of some burden or by rendering it adapted for a different purpose than or better adapted to the purpose for which it is used, or in some manner more accessible. In other words, the test is whether the particular tract of land will receive some special benefit from the improvement proposed; if it will, the engineer is to include it, and, if not, to exclude it. *Zinser v. Board of Supervisors,* 137 Iowa 660. But the finding of the engineer is not conclusive. As said, every landowner is afforded a hearing before the board of supervisors, and, if lands not benefited are included therein, its duty is to reject the engineer's report, or refer the matter back to him or another competent engineer for further investigation and report, and only when satisfied that the district as proposed by the engineer contains all the land which will be, and no land which will not be, benefited by the improvement, may the board of supervisors establish a drainage district. *Hartshorn v. Wright County Dist. Court,*

142 Iowa 72; *Shaw v. Nelson,* 150 Iowa 559. And a resolution of the board of supervisors establishing the district constitutes a conclusive finding that all lands included therein will be specially benefited by the improvement. *Chicago, R. I. & P. R. Co. v. Wright County Drainage District No. 43,* 175 Iowa 417; *Zinser v. Board,* supra; *Kelley v. Board of Supervisors,* 158 Iowa 735.

Counsel for appellants concedes that the order establishing the district is thus conclusive on the landowner, but argues that it is otherwise as to the board of supervisors, and relies on certain language in Section 1989-a12, Code Supp., 1913, a portion of which, after directing the appointment of three commissioners, reads:

"The board shall appoint three commissioners, one of whom shall be a competent civil engineer and two of whom shall be resident freeholders of the state not living within the levee or drainage district and not interested therein or in a like question, nor related to any party whose land is affected thereby; and they shall within 20 days after such appointment begin to personally inspect and classify all the lands benefited by the location and construction of such levee or drainage district, or the repairing or reopening of the same, in tracts of 40 acres or less according to the legal or recognized subdivisions in a graduated scale of benefits, to be numbered according to the benefit to be received by the proposed improvement; and they shall make an equitable apportionment of the costs, expenses, costs of construction, fees and damages assessed for the construction of any such improvement, or the repairing or reopening of the same, and make report thereof in writing to the board of supervisors. In making the said estimate the lands receiving the greatest benefit shall be marked on a scale of 100 and those benefited in a less degree shall be marked with such percentage of 100 as the benefit received bears in proportion thereto. This classification when finally estab-

lished shall remain as a basis for all future assessments connected with the objects of said levee or drainage district, unless the board, for good cause, shall authorize a revision thereof. In the report of the appraisers so appointed, they shall specify each tract of land by proper description and the ownership thereof as the same appears on the transfer books in the auditor's office, and the auditor shall cause notice to be served upon each person whose name appears as owner and also upon the person or persons in actual occupancy of any such land in the time and manner provided for the establishment of a levee or drainage district, which notice shall state the amount of special assessments apportioned to such owner, upon each tract or lot, the day set for hearing the same before the board of supervisors and that all objections thereto must be made in writing and filed with the county auditor on or before noon of the day set for such hearing. When the day set for hearing shall have arrived, the board of supervisors shall proceed to hear and determine all objections made and filed to said report and may increase, diminish, annul or affirm the apportionment made in said report or in any part thereof as may appear to the board to be just and equitable; but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement, and when such hearing shall have been had the board shall levy such apportionment so fixed by it upon the lands within such levee or drainage district."

It will be observed that the commissioners are not authorized to inquire whether the land will be benefited at all, but the entire section proceeds on the theory that every tract of land in the district will be benefited to some extent, and the two things, and the only two, which the commissioners are to do are: (1) To classify the lands on a percentage basis according to benefits; and (2) to equitably apportion the costs and expenses enumerated against

the several tracts of land, so doing as prescribed, and re-
port accordingly to the board of supervisors.  As said in
*Oliver v. Monona County,* 117 Iowa 43, they are to assume
that all the land within the district is benefited and to
classify and assess accordingly.  In *Kelley v. Drainage
District No. 60,* 158 Iowa 735, it was remarked that this
section of the Code Supplement "declares that 'in no case
shall it be competent to show that lands assessed would
not be benefited by the improvement.'  This is for the rea-
son that, by including such lands in the district when estab-
lished, the board of supervisors necessarily found that such
lands would be benefited by the improvement, and the mat-
ter will not be reconsidered in levying the assessments."

The commissioners, then, failed to perform their duty,
as exacted by this statute, in omitting 72 per cent of the
lands from classification and assessment.  Not only that,
but, in undertaking to pass on whether such lands would
be benefited, they exceeded their authority and this part of
the report was the merest surplusage.  Nor do we think
that, even had the omitted lands been classified and assessed
and so reported by the commissioners to the board of super-
visors, said board might have reconsidered the finding that
these would be benefited, made in establishing the district,
or have omitted them from the assessment roll entirely.  If
so, then the requirement that the district be established as
recommended by a competent engineer would be of no con-
sequence, for it subsequently might be evaded at the will
of the board by omitting to assess a portion of the lands
previously included.  The commissioners' report necessarily
includes all lands in the district as established; the board
of supervisors is to pass on objections thereto which are in
writing and filed with the county auditor on or before
noon of the day set for hearing, and, in doing so, "shall
proceed to hear and determine all objections made and filed
to said report and may increase, diminish, annul or affirm

the apportionment made in said report or any part thereof as may appear to the board to be just and equitable; but in no case shall it be competent to show that the lands assessed would not be benefited by the improvement." If the owner may not show that his land will not be benefited, any objection on that ground would be idle and unwarranted, and manifestly not contemplated. In the absence of objection, the board may levy the assessment as recommended by the commissioners. The hearing provided does not contemplate reopening the question previously decided that all the lands will be benefited in some measure, but is solely for the purpose of equalizing the apportionment of costs and expenses placed on the several tracts with the benefits to be conferred. True, the power is conferred to "annul * * * the apportionment made in said report or any part thereof," but this is limited by what follows, prohibiting any showing at the hearing that "the lands assessed would not be benefited." In other words, such an inquiry is excluded from the hearing, and, if the apportionment is to be annulled, this must be done on some other ground. In *Ross v. Board of Supervisors,* 128 Iowa 427, the section considered (Sec. 1946, Code, 1897,) did not contain the prohibitory clause above, it being found in Section 1947, Code, 1897, and then only precluded such showing of no benefit on appeal to the courts. Here, the clause relates to the hearing before the board of supervisors, and plainly was inserted to obviate a second inquiry into the question as to whether the lands included in the district would be likely to be benefited. The board of supervisors should have annulled the entire apportionment as made, and required the commissioners to classify and assess all the lands of the district as required by law. Instead, the levy of assessments was spread over but 28 per cent of the lands, and it is utterly impossible to say how much plaintiff's lands should have been assessed, had assessments been levied on

the omitted lands. As the appeal to the district court was from the action of the board of supervisors, the relief available there was appropriate for the district court, and, as the board might have annulled the assessments against plaintiff's lands, the order of the district court so doing, without prejudice to the right, if any, to make a new assessment, was rightly entered.—*Affirmed.*

GAYNOR, C. J., EVANS and SALINGER, JJ., concur.