J. F. LEWIS et al., Appellants, v. PRYOR DRAINAGE DISTRICT et al., Appellees.

**DRAINS:** Establishment—Objections—Requirements. Objections to
1  the *establishment* of a drainage district need not be in *writing,* nor in any particular *form,* nor made at or before any particular *date.* The all-essential requirement is that such objections be raised in *some* intelligent manner before the board of supervisors, in ample time for due consideration.

**DRAINS:** Establishment—Modifying Engineer's Report—Appeal.
2  An order establishing a drainage improvement by eliminating a portion of the engineer's recommendations, *without previous notification of intention to so eliminate,* is appealable by those adversely interested, without presentation of *any* objections before the board.

*Appeal from Mills District Court.*—SHELBY CULLISON, Judge.

APRIL 1, 1918.

IN the district court, this was an appeal from an order of the board of supervisors, establishing a drainage district. The appeal was taken in due form, and a petition filed, as required by statute. The appellees moved for a dismissal of the appeal, on the ground that the appellants had filed no objections before the board of supervisors. At the close of appellant's evidence, this motion was sustained. From such order of dismissal, they have appealed.—*Reversed and remanded.*

*W. S. Lewis,* for appellants.

*Genung & Genung, Cook, Cook & Cook,* and *H. M. Logan,* for appellees.

EVANS, J.—I. The drainage district established by the order of the board is known in the record as the Pryor Ditch. The proceedings pertaining thereto were in due form. The project was approved by the engineer as practicable, with a recommendation, however, that certain laterals, A, B, C, and D, be included as a part of the plan.

1. DRAINS: establishment: objections: requirements.

Notice was published, in accordance with Section 1989-a3, fixing the date of hearing as November 22, 1915. This notice required that all objections and claims for damages should be filed in writing before six o'clock P. M., November 21st. That the landowners affected by the project became divided at once into two opposing groups is without dispute. The purpose of the project was to drain certain lands on the Missouri River bottoms. It is made to appear that, in this locality, a large quantity of water is cast from a large watershed of the high lands upon these low lands. The problem of drainage is to conduct this water into the Missouri River in such a way as to prevent its spreading over a large surface of the low ground. From the high lands to their foot there is a fall of 32 feet. The natural course of the water upon the low lands is south-

erly and slightly westerly. The surface elevation of these low lands has this peculiarity: that a ridge of comparatively higher ground extends from north to south, about midway between the river and the hills. Between this ridge and the hills is the lower ground, which receives the first discharge of the water. The fall toward the Missouri River is slight, and the water, therefore, moves slowly. On the west side of the ridge, the elevation gradually decreases towards the river. The objective is to so carry the water that falls from the high watershed upon the low lands lying east of the ridge in question as to prevent its spreading thereon. This can only be done by building levees to conduct the water over the lower ground, and by digging excavations through the higher ground. The Pryor Ditch takes its head in the northeast corner of the established district. It will run nearly due west until it cuts through the ridge in question, and will then turn southerly and southwesterly, through what is called Haney's Slough. In order to follow this course, levees must be built across the low ground, and a deep excavation must be made across the ridge. Naturally, the owners of the ridge lands and of the lower lands west of the ridge object to such course of the ditch, both because of its interference with the cultivated lands, which have no need of drainage, and because of the diversion of water upon the lower lands west of the ridge.

Such landowners include the appellants. Their method of resistance was to put forward a counter scheme of drainage. On October 29, 1915, they filed with the auditor a petition for the establishment of a drainage district covering substantially the same territory as the Pryor District, though not exactly. In this scheme, the proposed ditch also took its head near the northeast corner of the district, and proceeded along the natural course of the water flow southwesterly to the Missouri River. This scheme was known as the Welch petition. This scheme was

also approved by the same engineer, who also testified on the trial that it was the better of the two. The proposed ditches were almost identical in length. On November 22, 1915, the board adjourned the consideration of the Pryor petition to a future date. Successive adjournments were had until January 24, 1916, on which date the board had set both petitions for hearing at the same time. The order of adjournment to January 24th was made on January 10th, and was as follows:

"Record Jan. 10, 1916. Now at this time, viz., Jan. 10, 1916, the board of supervisors being in regular adjourned session with all members present and acting in the matter of the Pryor petition was taken up and duly considered and there having been objections filed to the report of the engineer (commissioner) and claims for damages in the aggregate sum of $11,355 having been filed, the same were taken up and considered and another petition by S. M. Welch and others asking for a ditch to serve the same purpose being on file and pending before this board and has been set for hearing on Jan. 24, 1916. The further proceedings of the Pryor petition are continued until Jan. 24, 1916, at 10 o'clock."

On January 24, 1916, the following record was made:

"Record Jan. 24, 1916. Now on this 24th day of Jan., 1916, the board being regular adjourned session with all members present and acting, they took up and considered the petition of A. B. Pryor et al., and also at the same time they took up the substituted petition of S. M. Welch and others asking for the drainage and relief from the same waters, but along a different route of the Missouri River and by agreement of the council for both petitioners and objectors, the board proceeded to hear evidence for both of these petitioners at one and the same time and the board finds that at this time that both the Pryor and Welch petitions are in legal form and sufficient in description and de-

tail to give the board jurisdiction in the matter, and the
board further finds that due and legal notice has been given
all parties and interests of the pending of both petitions
and that the surveys made and plans and estimates of costs
reported by Seth Dean, Commissioner, for each of the above
petitioners are sufficient in detail to furnish the board with
the necessary information for acting."

After this date, the record of the proceedings pertain-
ing to both projects was carried as a joint record, under the
designation "Welch and Pryor ditches." The same ap-
praisers of damages were appointed at the same time for
both ditches. These projects received the consideration of
the board on scores of subsequent dates, pursuant to ad-
journments, from time to time. Every adjournment car-
ried both projects together, and every consideration was a
consideration of both projects. The record of the last three
meetings of the board pertaining thereto was as follows:

"January 2, the board now takes up the matter of each
of said ditches and finds that there are now objections pend-
ing to each of the said petitions and in order to better ad-
just these objections and in the best interest of drainage
the board now postpones final action thereon and adjourns
each of said proceedings until March 15, 1917.

"Record March 15, 1917, the board being in regular
adjourned session takes up the petitions. It was considered
for the best interest of all parties that a further hearing is
now set for March 21, 1917, to which all further business in
connection with these petitions are now adjourned.  *   *   *

"Record March 22, 1917, in the further matter of the
Welch, Wright and Pryor ditches, the board on this 21st
day of March, 1917, takes up the consideration of said mat-
ter and orders the establishment of the Pryor ditch and the
rejection of the Welch and lateral C. and D."

On April 2d, a formal resolution was adopted, estab-
lishing the Pryor ditch and rejecting the Welch ditch. It

is from such order that the appellants have appealed. The question before us is whether the appellants were entitled to a trial upon the merits of their appeal, or whether the motion to dismiss was properly sustained for want of proper objections before the board of supervisors.

It will be noted from the foregoing that the published notice which fixed a date of hearing in the Pryor petition required all objections and claims for damages to be made in writing before 6 P. M., November 21st. No written objections were ever filed by the appellants before the board, unless the presentation of the Welch petition could fairly be deemed as such. Nor is it made to appear that they actually appeared in person before the board to make objection before 6 P. M., November 21st. Nor is it disclosed by the evidence whether they actually appeared in person before the board on November 22d. The appellants raise no question as to the legality or regularity of the procedure leading up to the final action of the board. They ask to be heard on appeal only on what may be termed the ultimate merits of their controversy. Their general contention is that they were entitled, as landowners, to be protected against the diversion of this water from its natural course, and that the scheme presented by them was a better scheme, in a practical sense, and was more just and equitable in a legal sense than was that adopted by the board. Are they now precluded from being heard because of failure on their part to bring their objection properly before the board? The drainage statute requires claims for damages to be made in writing, and by the date fixed by the board. It makes the same requirement as to objections to assessments of benefits. It does not require that objections to the establishment of a district shall be made in writing, nor that they shall be made in any particular form, nor that they shall be made by any particular date. It is the contention of appellee that we have held in previous cases that objections

must be filed before the board, in order to entitle the objectors to appeal. This appears to have been the view, also, of the trial judge. The ground of his ruling was indicated as follows:

"If the Supreme Court had never said anything at all about the necessity of filing objections before the board of supervisors, I would have very little hesitancy in determining this motion; because I think logic, reason, justice, and everything else require that a person have the opportunity to appeal from an order of the board to the effect that the benefits do not exceed the costs, whether they file any objections or not. That the law itself makes that an issue for determining whether any pleadings are filed, or objections are filed by the parties in interest, and, that issue having been presented by the statute, there should be a right of appeal from it, and in view of these various cases of the Supreme Court that have been cited here, and the apparent practice, as disclosed by them, it leads me to the view that objections are necessary, although I think it is an unreasonable requirement, and my present view of the matter is that the motion to dismiss that has been made at the proper time would be good."

The foregoing is a clear and concise statement of the view of the trial court as it would be except for our previous decisions. The view thus expressed appeals to us as eminently sound; and we are able to find nothing in our previous decisions which stands in the way of its adoption. Some of the cases cited in the brief of appellee to this proposition were cases relating to damages and benefits which are controlled by a different provision of the statute. Such include *In re Farley Drainage Dist.*, 144 Iowa 476; *Lightner v. Greene County*, 145 Iowa 95; *Hampe v. Hamilton County*, 146 Iowa 280.

We have held that, in order to entitle a person to appeal from an order of establishment, an issue must have

been raised before the board "in some manner." *Lyon v. Sac County,* 155 Iowa 367. A person will not be deemed aggrieved, for the purpose of an appeal, unless he has suffered an adverse decision below on some issue. We have also held, in cases where specific objections were in fact filed, that such specifications operated as a waiver of other objections not included; and especially that a person could not make objections on appeal pertaining to mere errors and irregularities in the details of procedure before the board, or as to the sufficiency of the data furnished by the engineer's report, if such objections were not made to the board at a time when they could have been remedied. *Kelley v. Drainage Dist.,* 158 Iowa 735; *Prichard v. Woodbury County,* 150 Iowa 565; *Lyon v. Sac County,* 155 Iowa 367.

We have never held that the objections must be in writing nor that any particular formality was requisite, nor that they must be made before the date fixed for hearing. Where the complaining party objects to the scheme on its larger merits, or *in toto,* there is little occasion for requiring formality. These schemes usually affect scores of landowners. To require from each one a formal written statement of his objection could only serve to encumber the record of the board, and to burden it with the examination of mere formalities. Objecting parties in such a case frequently appear in groups, and a group may well be represented by a spokesman, at the time of consideration by the board. In this case, consideration was had upon scores of dates, extending over a period of nearly 18 months. The record of the board shows repeatedly that it recognized objections as pending. There was no record of what the objections were, nor is there any dispute as to what their general nature was. We do not think it material whether these objections were presented before 6 P. M. of November 21, 1915. Nor was it material that they should have been presented prior to any other particular date, provided that they were fairly

brought to the consideration of the board, in abundant time
to guide its action.  As was well stated by the trial judge,
the issue between petitioner and objector as to the gen-
eral merits of the project is practically made by the statute.
Even if the statute had required written objections, we
should incline strongly to hold that the presentation and
filing of the petition for the counter scheme of drainage
would have fairly met such a requirement.  The record of
the board shows that their consideration of one always in-
cluded the counter consideration of the other.  To adopt
one was necessarily to reject the other.  Such was the form
of the final order made by the board.  There appears to be
no reason why the appellants should not be entitled to
have consideration on appeal of the same question as was
considered by the board.

II.  There is another feature of the case which mili-
tates against the sustaining of the motion of appellees.
The approval by the engineer of the Pryor drainage scheme
carried with it the recommendation that lat-
erals C and D be included as a part of the
scheme.  In the final order of establishment
by the board, laterals C and D were re-
jected, and the scheme was adopted without such laterals.
The appellants had had no advance opportunity to object
to such an order.  There was no advance notice that it
would be made.  From the very nature of the case, there-
fore, the appellants should be heard upon the propriety of
the order in that respect, even though no objections had
been filed or presented before the board.  Whether these
laterals should be deemed as a principal part of the im-
provement, or only a subordinate part thereof, we do not in-
quire, nor do we intimate any opinion as to the merits of
the objection.  We only hold now that the objection is one
which could not be made before the board, and we see no
valid reason why it should not be considered on appeal.

2. DRAINS:
establishment:
modifying en-
gineer's re-
port: appeal.

We reach the conclusion that, in a broad and general way, the objection of the appellants to the Pryor scheme was fairly brought to the consideration of the board, and was considered by the board, within the lines indicated herein. Disregarding, therefore, all technical objections relating to the formalities of procedure, the appellants were entitled to a hearing of their appeal upon the larger merits of the controversy. This would involve a consideration of the comparative engineering merits and of the comparative fairness and justice of the two drainage schemes presented for the consideration of the board. The order sustaining the motion for dismissal must, therefore, be reversed.—*Reversed and remanded.*

PRESTON, C. J., LADD and STEVENS, JJ., concur.