SMEDLEY *v.* KIRBY.

1. MUNICIPAL CORPORATIONS—CASTING VOTE OF MAYOR—INTEREST.

A mayor who employed an attorney to contest an attempted diversion of the public funds by the city council, but incurred no personal liability to compensate the attorney, is not precluded, on the ground of interest, from casting an affirmative deciding vote, where, upon a motion to pay the attorney fees, the vote of the aldermen results in a tie.

2. SAME—DEBTS—ISSUANCE OF WARRANT—MANDAMUS.

*Mandamus* to compel a city clerk to issue a warrant in favor of a creditor whose claim has been duly allowed by the council will not be refused because the petition fails to allege that there is money on hand sufficient to pay the same, where the claim of lack of funds has at no time been advanced by the clerk as a reason for withholding the warrant, and it does not in fact appear that the funds are insufficient.

*Certiorari* to Ottawa; Padgham, J.    Submitted March 14, 1899.    Decided May 23, 1899.

*Mandamus* by Charles O. Smedley to compel Thomas E. Kirby, clerk of the city of Grand Haven, to draw a warrant on the city treasurer for an amount due relator

for legal services. From an order denying the writ, relator brings *certiorari*. Reversed.

*Smedley & Corwin* (*J. J. Danhof*, of counsel), for relator.

*Charles E. Soule* (*Walter I. Lillie*, of counsel), for respondent.

HOOKER, J. In June, 1898, the common council of the city of Grand Haven passed a resolution to transfer from the contingent fund of said city in the hands of its treasurer, and to divide between and add to several other city funds, the sum of $7,000. The mayor, Baar, attempted to veto the resolution, but the clerk, Kirby, refused to file it, and the mayor employed Smedley to institute *mandamus* proceedings to compel it. This was done, and they were successful. The case reached this court, and will be found reported in *Baar* v. *Kirby*, 118 Mich. 392. A similar proceeding was commenced against the council, but it was not brought to this court. The employment of Smedley by the mayor was not authorized by the council, but it is claimed that the mayor had authority to employ counsel, inasmuch as the city attorney was in sympathy with the resolution vetoed, and took the side of the council and clerk in the matter.

In November, 1898, Smedley presented a bill against the city for $349.50 for his services in the two cases mentioned, and another bill against the clerk for $37.80, the costs of this court taxed in the case of *Baar* v. *Kirby*. These claims are said not to have been verified as required by section 20, chap. 8, Act No. 215, Pub. Acts 1895, but the record indicates that they were. They were referred to the finance committee of the council, with the city attorney added, for examination and report. This committee reported at a subsequent meeting, in substance, that:

1. The city had not employed Smedley, and was under no obligation to pay his bill.

2. A reasonable sum should be allowed the mayor to pay his (the mayor's) attorney fees.

3. They recommended that the mayor be allowed $37.80 to pay the bill of costs against the clerk, and $50 for all other legal expenses in his *mandamus* suits.

4. Nothing should be allowed to Smedley on his bills.

Alderman Vos moved to amend this by a resolution allowing $349.50 to the mayor, with which to pay his attorney fees in the case against Kirby. This motion was voted upon by the aldermen, and resulted in a tie. The mayor voted for it, and declared the motion carried. The same course was taken on the motion as amended.

Subsequently four members of the council commenced *mandamus* proceedings against the mayor to compel him to rescind his action in declaring the motions carried, and a few days later this application was filed by Smedley to compel the clerk to draw the warrant for $349.50. In the former, issues were framed and evidence was taken, while the latter was heard upon petition and answer. They were heard together, and the circuit judge makes return of the proceedings and final order in each. The return states as a reason for denying the writ in this case that the two cases were heard together, and the facts brought out in the *Bishop Case* were considered in disposing of this. In short, they seem to have been treated as one case, and, while the *Bishop Case* was not brought here by a separate writ, the matter is all before us. It is manifest that the meritorious question is the same in both, viz., whether the mayor had a lawful right to decide the tie by his own vote. The circuit court found that he had a personal interest in the matter, and, if this is to be treated as a matter of fact, we cannot review it, any more than we could the finding of a jury. But the evidence is all returned, and it is proper for us to examine it, to ascertain whether it furnishes any opportunity for dispute upon the question,—in other words, whether the judge has correctly applied the law to undisputed facts.

Counsel for the relator urge that the council was attempting an unlawful thing; that they intended to divert the public funds from proper uses, under resolutions which

had passed the council, but had been vetoed; that the city-clerk and attorney were aiding the council, and that it was within the proper sphere of the mayor to prevent it; and, therefore, that he had authority to employ counsel to aid him in necessary litigation on behalf of the city. This is substantially the broad proposition that, when a mayor thinks the council is taking illegal action, he has authority to bind the city for expenses and costs of necessary proceedings to try the question, or, at least, that he may institute proceedings, and that the test of his authority is the result. We need not discuss this question, as the case can be disposed of upon another ground. As said in the case of *Barnert* v. *Mayor, etc., of Paterson*, 48 N. J. Law, 395: "If this ground of recovery be regarded as untenable or doubtful, I think the action of the city authorities has been such as to raise this into an express promise to pay;" that the right of a corporation to indemnify an officer for losses and expenses incurred in the discharge of an official duty in a matter in which the corporation is interested is undoubted, and this power has generally been found sufficient to afford protection against flagrantly illegal action. One-half of the aldermen were in favor of granting it in this case, and, if the mayor was entitled to vote upon the question, the city is already bound to render compensation. This must depend upon the nature of the mayor's relation to the matter. It is apparent that the employment of relator was on behalf of the city. The mayor expressly avoided a personal liability. This he had a right to do, and, while he could not pledge the credit of the city, it was competent for him to make an arrangement whereby the relator assumed the risk of losing his services if the authorities should not assume the burden at some subsequent time. The charter provides (chapter 8, § 5) that "no alderman shall vote upon any question in which he shall have a direct personal interest." Another provision (chapter 8, § 16) is, "No member of the council * * * shall be interested, directly or indirectly, in the profits of any contract * * * to be performed for the

corporation." This indicates that a pecuniary interest was intended. Anderson defines "interest" as "such relation to the matter in issue as creates a liability to pecuniary gain or loss from the event of the suit." See, also, 11 Am. & Eng. Enc. Law, 422; *Taylor* v. *Commissioners of Highways*, 88 Ill. 526.

We are of the opinion that the vote was authorized by the charter, under the admitted facts. It is urged that the circuit court has determined otherwise upon the question of fact; but we gather from the order and the return that the matter turned upon the legal question, and that it was not found that the mayor had incurred a pecuniary obligation, but that possibly relator might claim so, and that a legal controversy might arise, which the mayor would be brought to the expense of defending to escape pecuniary loss. But there is nothing to show a probability of this. On the contrary, relator does not claim it.

Counsel urge further that the respondent should not be required to issue the warrant, for the further reason that there is no resolution authorizing it. This is upon the theory that the order of the court in Bishop against Baar, holding the mayor's vote illegal, has not been appealed from, and therefore nullifies the resolution adopted, and, further, that this application was for an order to compel the issue of a warrant payable to the relator, while no claim has been allowed in his favor, but only in favor of Baar, the mayor. These are technical. As we have said, the cases were heard together, and, for practical purposes, merged, at the circuit. The merits of both are here, and counsel for both parties have referred to the proceedings in the *Bishop Case*. The appeal has brought up the merits of the whole controversy. The respondent does not appear to have refused to issue a warrant to the relator on the ground that the mayor was entitled to it, or to have offered to issue one payable to the mayor. The relator has signified a willingness to accept such a one. Counsel for the respondent, in their brief, treat the interest of the mayor in the claim as the main question, as it is.

120 MICH.—17.

Again, it is said there is nothing in the petition to show that there is money in the fund to pay the order. Of this it is sufficient to say that, if the act forbids the drawing of a warrant in the absence of funds, nothing indicates a refusal upon such ground, and we are not advised that such fund is wanting.

We are satisfied that the relator was entitled to have a warrant for the amount claimed, payable to himself or the mayor; and an order will be entered reversing the order of the circuit court, and directing the writ to issue accordingly, with costs of both courts.

The other Justices concurred.