Chicago, Great Western Railway Company, Appellant, v. Board of Supervisors, Appellee.

DRAINS: Assessment of Benefits—Denial of All Benefits. A property owner will not be permitted to say that a drainage improvement, properly established and unappealed from, does not benefit his property to any extent. (Sec. 1989-a12, Code Supp., 1913.)

**DRAINS:** Assessment of Benefits—Irregularities of Commissioners—
2 Classification. He who objects to an assessment of benefits, because the statutory procedure in respect to the classifications of the lands was not strictly complied with, must affirmatively show that the variance resulted in an assessment different than would have resulted had the statute been strictly complied with. So held where the commissioners first figured the amount of benefits on each tract and then classified, instead of doing exactly the reverse. (Sec. 1989-a12, Code Supp., 1913.)

**DRAINS:** Assessment of Benefits—Degree of Evidence to Modify.
3 An assessment will be modified on appeal only on a clear and satisfactory showing that, after considering the various elements which properly enter into the estimate, the court is convinced that the benefits have been inequitably apportioned. Evidence reviewed, and assessment sustained.

**DRAINS:** Assessment of Benefits—Judgment of Commissioners and
4 Supervisors. On the question of sustaining or modifying an assessment, due deference will be given to the final action of the commissioners and supervisors, especially where the record indicates that their investigation was very full and complete.

**DRAINS:** Assessment of Benefits—Railway Right of Way—Elements
5 Considered. In the assessment of a railway right of way for the cost of a drainage improvement, it is pointed out that elements properly considered were: (1) Lessened cost of maintaining bridges, (2) a drier and better roadbed, (3) lessened danger from washouts, (4) opportunity to remove a prior existing ditch from the railway right of way, thus utilizing the full width of the right of way for railway purposes.

*Appeal from Dubuque District Court.*—Robert Bonson,
Judge.

Thursday, June 29, 1916.

This is an appeal from an assessment levied against the property of the Chicago, Great Western Railroad Company by the board of supervisors of Dubuque County in proceedings establishing a drainage district. The issues were as to the validity of the assessment on account of the method employed by the commissioners and the board of supervisors in fixing the assessment, and, second, whether or not the assessment levied against the property of appellant is its

proper proportion of the cost of the improvement and in accordance with the benefits enjoyed by it. The case was tried in the district court as in equity, and the court confirmed the assessment of the board of supervisors and entered a decree for the defendants. The plaintiff appeals.— *Affirmed.*

*Carr, Carr & Evans,* and *George T. Lyon,* for appellant.

*Brown, Lacy & Clewell,* for appellee.

PRESTON, J.—The errors assigned relate to the two matters before stated; that is, that the trial court erred in refusing to set aside the assessment because the commissioners and the board of supervisors failed to follow the procedure prescribed by the statute, and erred in refusing to reduce the assessment. Appellant states in argument that the question presented is whether or not the assessment levied against the property of appellant is equitable and is merely a question of fact, and appellee states it substantially the same way: whether the apportionment of benefits assessed against appellant's property is an equitable apportionment as compared with that assessed against the various other tracts in the district.

The controversy arises over the assessment of benefits to appellant's property, consisting of right of way, yards and lots in Drainage District No. 1, Dubuque County, Iowa. Some large maps or plats were offered in evidence and are contained in the abstract. It is not practicable to set these out in the opinion, and we shall attempt to describe the situation as best we may. The drainage district comprises about 475 acres of land lying in a comparatively narrow valley. As one witness puts it, this district is not like others out in the country and away from race tracks, railroad tracks and other things. The district is situated north of and outside the city of Dubuque, the southerly boundary of the district coming to the northerly limits of the city. The land com-

prising the district is cut up into small tracts, the description generally being as lots. Including the railroad right of way and the benefits to highway, there are 151 separate tracts of land in the district, as to each of which the benefits were assessed and determined. The acreage of the respective tracts varies from 14/1000 of an acre to 42 54/100 acres. Many of the tracts are very small. For convenience, the acreage of most of the tracts was set out in the report of commissioners to assess benefits, and is shown in a table set out in the abstract. Fifteen pages of the abstract are taken in printing this table. The property within the district is used for various purposes, including manufacturing, residences, truck gardening, farming, racetrack, gravel beds and railway purposes. The improvement consists of a main drain and three laterals. The main drain commences at the extreme south end of the district at the city limits and discharges into the old bed of the Little Maquoketa River. At its head, the main drain is a tile pipe, which extends a distance of a little less than 2,800 feet, and then becomes and continues to its mouth an open ditch. The length of the main drain is about 14,000 feet. Lateral No. 1 is a tile pipe 396 feet long, discharging into that part of the main drain where it is a tile pipe. Lateral No. 2 is an open ditch about 312 feet long, commencing at a bridge through the right of way of appellant's railroad, which bridge is at a point where the water coming from the Peru Valley, or North Dubuque, is held off from the railroad company's property by a dike constructed by appellant. Lateral No. 3 is an open ditch extending along the northeasterly side of the railroad, and is about 3,000 feet long. The district was established by the board of supervisors pursuant to proceedings had on a petition of property owners, filed January 30, 1912. No appeal was taken from the order establishing the district, and the appeal taken to the district court was only from the order of the board of supervisors adopted May 9, 1913, pursuant to a notice served upon appellant, fixing that date as a time for determining

the assessment of benefits. At that time, the benefits were assessed, and the amount increased as to one tract of appellant's property, the assessment against its right of way. The appellant's railroad, as it proceeds northerly from the city of Dubuque, passes for some distance through this valley in which the drainage district is situated. From the city limits northwesterly for a distance of a little over one mile and to the northwesterly end of the racetrack property owned by the Union Electric Company, the limit of the district runs along the southwesterly edge of the railroad right of way; so that for that distance the railroad right of way is outside of the drainage district. The railroad then runs for a distance of something over a mile through the drainage district. From the point where the railroad enters the district, and for a distance of about 1,800 feet, the railroad is comparatively high, and as to this part it is not greatly affected by the drainage system. From there on to where it passes out of the district, a distance of something over 3,600 feet, the railroad is constructed through low, swampy, mucky, unstable ground, composed of a deposit of vegetable matter, and for most of this distance is constructed in substantially the bottom of the original natural waterway. For about 3,000 feet, the main drain parallels and adjoins the railroad right of way on its southwesterly side, and for a distance of about 3,000 feet, Lateral No. 3 parallels and adjoins the railroad right of way on its northeasterly side.

The property of appellant lying within the district consists of the right of way above referred to, passing through the heart of the district, and six tracts of land of varying sizes, from a fraction of an acre to 9.8 acres. The last mentioned tract comprises defendant's yards, as we understand the record. At a point near the northerly end of this last named tract—that is, the yards—is a large culvert through the railroad right of way, and Lateral No. 2 commences at the discharge end of this culvert. The water from the Peru Road Valley, or North Dubuque, lying easterly of these

grounds, comes to the railroad property at this point, and, before the drainage district was established, there was, and still is, a large ditch, and the appellant had constructed a large dike to hold the water off the tracks. The water comes down from the Peru Road Valley along the dike, then under the track and one sidetrack, then along a ditch between the main track and two sidetracks to the large culvert at the north end of the yards, thence through that culvert, and now into Lateral No. 2. This ditch brings down a large volume of water. The northerly part of the tract on which the yards are situated is low, and, prior to the construction of the ditch, the water from the valley, or North Dubuque, discharged into a low, flat area, and the water stood over it and covered it sometimes eight feet deep, and formed a lake. Now this water is discharged into the ditch and quickly carried away and the lake has been drained. The character of soil forms an unstable roadbed, and there has always been trouble in maintaining the track in good surface and line. The right of way at this point is 80 feet wide. Prior to the construction of the drainage system, a ditch was maintained by appellant on the southwesterly side of this track for the entire distance where the drainage ditch now parallels the right of way. Large quantities of water stood there most of the time.

Prior to the establishment of a drainage district, appellant maintained nine wooden bridges on its right of way along the stretch of track, for the purpose of affording private crossings for the people who owned the land adjacent to the railroad, and these bridges frequently washed out. Occasionally Little Maquoketa River overflows its banks, and the water backs up into this territory, and frequently, when there is a heavy rain, the water comes down from the surrounding hills and the valleys, causing a flooded condition. Prior to the construction of the drainage ditch, the water remained on the land for a considerable time, soaking the embankment on which the railroad was built, and at times the embankment

was washed out and had to be filled in before trains could pass. One Anderson, a civil engineer under the employment of the board, laid out the drainage district, designed and superintended the construction of the improvement, and was one of the commissioners appointed by the board to make and report on the question of benefits. While Anderson was designing the improvements, he was solicited by Mr. Delo, appellant's engineer, to make the ditch larger than had been planned and to keep it off the right of way so as to leave room for the railway to double track the railroad in case that should be later desired. Anderson did enlarge the ditch over his original plans and kept it off the right of way. The main ditch and Lateral No. 3, both of which parallel the railroad, are constructed outside the railroad right of way. The side away from the railroad was in both instances used as the spoil bank, and the earth kept out of the right of way. The location of the two ditches paralleling the railroad outside the right of way has relieved appellant of the necessity of maintaining the former ditch along the railroad right of way for over 3,000 feet, and has relieved it from the necessity of maintaining the nine bridges before referred to; the water passes off quickly and has made the surrounding ground dry, has improved the health conditions and given appellant a better and drier roadbed.

The amount necessary to be raised for the improvement had been ascertained to be $21,500. As stated, the 151 tracts among which to apportion this amount were irregular in shape and varying in size. The three commissioners entered upon their work and went carefully over the ground, examining each piece of property and making notes at the time of what their first impression was as to the proportional benefits accruing to each tract. When they had gone over the entire district, they found that the amount thus tentatively apportioned was in excess of the amount required. They then went over the entire district, re-examining each piece, making changes, and reducing some of the apportionments, and, when

they had finished, found that the aggregate amount was still more than required. They then went over the entire district and again examined each piece, making further reductions and changes, making a memorandum in the same manner as before, and found that the aggregate of their tentative apportionment was substantially the amount required. They spent 13 days in making these various examinations and their report. They made their report, showing the description of each tract, the name of the owner, the class in which each tract would fall, and the amount of benefits apportioned to each tract. This report was filed November 30, 1912.

Some of the property owners filed objections to the assessment as fixed by the commissioners, and hearings were had by the board of supervisors, and the testimony of a large number of witnesses was taken. The hearings before the board continued about nine days. The appellant was one of the objectors so appearing. The board of supervisors not only heard this testimony, but personally examined the various tracts of land in the district, going over the same three or four times, the last occasion being in the spring of 1913, after the ditch had been practically completed, when they were able to observe its effects, to some extent at least. Thereafter, the board fixed May 9, 1913, for further considering and acting upon the report, and gave notice to appellant of a meeting and the intention to increase the apportionment on appellant's right of way from $1,600, as fixed by the commissioners, to $2,100. At this meeting and after the hearing, the board adopted its resolution confirming and fixing assessment of benefits. By this resolution, the board reduced the assessment as fixed by the commissioners on 10 tracts of land, the total reduction amounting to $1,710, and increased the assessment over that recommended by the commissioners on three tracts, the total increase being equal to the amount of reductions made. The assessments were increased on the property of the Dubuque Industrial Corporation from $4,600 to $5,500, the racetrack property of the Union Electric Com-

pany from $2,500 to $2,810, and on the right of way of appellant from $1,600 to $2,100.

All of the three commissioners appointed to assess bene-fits and four of the seven members of the board of super-visors were witnesses on the trial in the district court. Mr. Anderson, defendant's engineer, was called by appellant as a witness and testified, as to the various tracts in the district owned by the appellant, that the amounts of the assessments for benefits apportioned against all of them, taking into consid-eration the benefits received by these tracts and the benefits received by the other tracts in the territory, were in fair proportion to the other tracts, and just and equitable, com-pared with the other tracts, and that the benefits exceeded in each case the assessment. The two other commissioners testified substantially the same. The four members of the board of supervisors who were called as witnesses for appellee each testified, in substance, that of the $21,500 that was required to be raised, the $2,100 apportioned and assessed against the right of way of appellant was the fair, equitable and reasonable proportion of said sum which that property should bear, taking into consideration the various amounts assessed against the other pieces of property in the territory. The cross-examination of these witnesses is set out at some length by appellant in argument, and it is thought that thereby their testimony was shaken, and it may be this is so to some extent, but we have, as of course we should have, taken their testimony all together. The only testimony offered by appellant contradicting this testimony of the com-missioners and supervisors is that of Mr. Delo, its engineer, whose testimony was that none of appellant's property had been benefited by the drainage improvement, and that each tract was worth, after the drainage system was constructed, the same as it was before.

The point most strongly urged by appellant is in regard to the raise of $500 on its right of way, and it is doubtful,

under the record, whether they are in position to object to the original assessment or the confirmation thereof of the other two amounts. There was no appeal from the order establishing the district and including its right of way therein, and, under the statute and the authorities, appellant cannot now be heard to say that its property has not been benefited to any extent. Section 1989-a12, Code Supp., 1913; *Kelley v. Drainage District,* 158 Iowa 735.

1. DRAINS: assessment of benefits: denial of all benefits.

1.   Conceding that the method of procedure prescribed by the statute was not strictly complied with as to classification, variance therefrom does not defeat the jurisdiction of the board or the court. If it be conceded that the commissioners first ascertained the amount of benefits to be apportioned to the respective tracts and then figured and designated the class, and that this is not the method contemplated by the statute, there is no showing in this case that the result is different than it would have been, had they first designated the class and then figured the amounts. It does not appear that appellant has been prejudiced in any manner by this procedure. It has been held that, in the absence of a showing of prejudice, even if it can be said that the method employed varied from that defined by the statute, the findings will not on that account be disturbed. *Hampe v. Hamilton County,* 146 Iowa 280; *Kelley v. Drainage District,* 158 Iowa 735; *Lightner v. Board,* 145 Iowa 95; *Chicago, M. & St. P. R. Co. v. Monona County,* 144 Iowa 171; *Crosley v. Board,* 157 Iowa 590.

2. DRAINS: assessment of benefits: irregularities of commissioners: classification.

2.   Under the record in this case, neither the district court nor this court is authorized to set aside the levy, and the utmost relief which can be granted is to modify or reduce a given assessment; and even this measure of relief may not be given except when the court is satisfied, upon clear and satisfactory showing, that, after considering

3. DRAINS: assessment of benefits: degree of evidence to modify.

the various elements which may properly enter into the estimate, the cost has been inequitably apportioned. If such showing is not made, the assessment must be sustained. *Chicago, R. I. & P. R. Co. v. Wright County Drainage District,* 175 Iowa 417.

As we have said many times, because the trial court saw and heard the witnesses, we should give some weight to its finding. In addition to that, the commissioners and the members of the board of supervisors personally inspected the different properties in this district, which necessarily is a great aid to them in fixing the assessments. They were describing, or attempting to describe, as witnesses, what they had personally seen as to the surroundings and the character of the different properties, and, as we said in *Mittman v. Farmer,* 162 Iowa 364, at 370, the fact that the commissioners and the board of supervisors, whose duty it was to fix the assessment, personally inspected the property, should also be given weight.

*4. DRAINS: assessment of benefits: judgment of commissioners and supervisors.*

We have heretofore set out the testimony of defendant's engineer, Anderson, and other witnesses, that the apportionment was equitable, etc. No fraud is claimed. Even though we should think the assessment against appellant's right of way was high, we think defendant has not overcome the presumption in favor of the assessment, nor has it presented any facts from which this court can determine at what amount the assessment should be fixed.

Appellant contends that the only expense the railroad company has been relieved of by the construction of the improvement is the expense of maintaining the bridges which formerly were on its right of way, which amounted to about $20 per year, which is the interest at six per cent. on $333.33; that the principal sum, therefore, represents the maximum value of the benefits. This is the only basis given by appellant anywhere, as we read the record, for

*5. DRAINS: assessment of benefits: railway right of way: elements considered.*

any change in the assessment. But, under our statement of the facts in a prior division of the opinion, we think the resulting benefits to the railroad company were more than this. Some of the resulting benefits to the company were the removal of the stagnant water standing in the swamp; the improvement left the right of way and surrounding country free from water, thus making a drier and better roadbed; the water was carried off more quickly in case of floods, thus preventing washouts of the tracks; defendant was permitted to remove the ditch off the right of way, thus giving the railroad the use of its entire 80 feet; as well as the saving in expense of constructing and maintaining the nine private crossing bridges referred to by appellant. Furthermore, the present bridges take the place of these nine former bridges maintained by the railroad company. The present bridges are on the right of way of the drainage district and over the drainage ditches and are built and maintained by the drainage district. As before stated, as first planned, the ditch was to be smaller than it was finally constructed. The engineer's estimate on his first plan was that the improvement was to cost about $16,000; but, at the request of Mr. Delo, the appellant's engineer, the ditch was made larger and constructed off appellant's right of way. The result of this change was that the cost of the improvement was $21,500. Aside from this, as we have already stated, the engineer for the district, who planned the district, superintended its construction, served as one of the commissioners to assess damages, and as one of the commissioners to assess benefits, and had repeatedly examined every tract of land in the district, states that, as to each of the tracts within the district owned by appellant, the assessment made was in fair proportion to the other tracts in the district. Such was the testimony of other witnesses.

Our conclusion is that the judgment of the district court was right, and it ought to be and is—*Affirmed.*

Deemer, Weaver and Salinger, JJ., concur.