MARGARET SULLIVAN, Appellant, v. BOARD OF SUPERVISORS OF PALO ALTO COUNTY et al., Appellees.

LAURA LETTIE KREY, Appellant, v. BOARD OF SUPERVISORS OF PALO ALTO COUNTY et al., Appellees.

DRAINS: Assessments—Personnel of Commission. The engineer who
1  made the preliminary survey of the district is not disqualified to serve on the commission to assess benefits.

DRAINS: Assessments—Method of Classification. A classification of
2  lands on the basis of swamp, wet, low, and high is not in violation of the statute.

DRAINS: Assessments—Nonentertainable Questions. The wisdom or
3  unwisdom of constructing a drainage improvement in part out of the natural course of drainage is not a question which may be reviewed on an appeal from an assessment of benefits.

DRAINS: Assessments—Unauthorized Reduction. On appeal from an
4  assessment of benefits, the court may not make a reduction in assessment in order to compensate the landowner for damages for the construction of an outlet on his land.

*Appeal from Palo Alto District Court.*—D. F. COYLE, Judge.

APRIL 8, 1922.

APPEALS from assessments of benefits in Drainage District No. 95, in Palo Alto County, Iowa. The two cases were consolidated for trial in the district court, and by agreement of parties, are consolidated on this appeal, and presented on a single record, the same as in the court below.—*Affirmed.*

*McCarty & McCarty,* for appellants.

*Davidson & Burt,* for appellees.

ARTHUR, J.—I.   The drainage district comprises about 1,000 acres of land, lying, the long way, from north to south.  It is, between the meandered lines of the district, about a section and a half wide at the north end, and is of approximately that width two thirds of its length, and widens out to about two sections in width at the south end, where the lands of appellants are located, the district being located in Sections 7, 8, 17, 18, 19, and 20, Township 79, Range 34.  The general slope of the district is from the north to the south, with some variations.  From the north end of the district down to about Station 34, which is 3,400 feet north of the outlet, the course of natural drainage is approximately down through the center of the district, a little over to the east side.  At about Station 34, there is quite a ridge or divide, some 2½ to 3 feet high, which, in a state of nature, turned the natural drainage to the east, and then to the northeast, through swales, into a pond of about 9 acres, and then to the southeast, into a creek, which creek courses to the south, and lower down to the southwest, to nearly—within 220 feet—south of the outlet of the drainage improvement established in the district.  The drainage is by means of tiling,—that is, the main drain is of tile, and also the laterals.  The main tile drain starts at the north end of the district, and follows in the course of natural drainage down to about Station 34, and there, instead of being laid toward the northeast and then to the southeast, into the creek which flows to the southwest, at about Station 34, cuts through some high ground in the southwest corner of the southeast quarter of the northeast quarter of Section 19, and runs directly south about 70 rods, across a large basin or slough, containing 25 or 30 acres, located on the lands of appellants; and after leaving the slough, it runs southeast, cutting through some high ground, across the land of appellant Krey, down to the outlet, which is located a short distance from the east line, and about midway north and south of the southeast quarter of the southeast quarter of Section 19, owned by appellant Krey.  There is a road running east and west across the district, north of the

Sullivan land, between Sections 18 and 19. The Sullivan land and also the Krey land lie south of this road, in Sections 19 and 20. There is a lateral starting at the east edge of the northeast quarter of the southwest quarter of Section 19, owned by A. M. Parmenter, running east across the big slough on the Sullivan and Krey lands, there entering the main tile drain. There is also a lateral on the Sullivan land in the northwest quarter of the northeast quarter, entering the main tile drain from the west. There is also a third lateral, entering the main tile drain from the west, north of the road on the Fiscus land in the southwest quarter of the southeast quarter of Section 18.

The exact date does not appear, but the district and the improvements therein were established. Commissioners were appointed to assess benefits, one of whom was R. H. Fuller, the engineer who made the preliminary survey of the district, which commission classified the lands and spread assessments, and made return of their work in writing. Objection to assessments of benefits made by the commissioners were filed and presented by appellants to the board of supervisors, and were heard. The board of supervisors made no change in the assessments. Thereupon Sullivan and Krey appealed to the district court, and their appeals were tried together. In the Sullivan case, the court found that an overflow assessment in the amount of $144 on the Sullivan land was not warranted, and reduced such overflow assessment on Lot 6 from $563 to $491, and on the southeast quarter of the northeast quarter from $429 to $393, and on Lot 6 in Section 20 from $38 to $2.00; and held that all other assessments should stand as made by the commissioners, and entered decree accordingly. Appellant Margaret Sullivan, not being satisfied with the reduction made by the district court, presents this appeal. In the Krey case, the court sustained the assessments made by the commissioners, and entered decree accordingly, from which decree Laura Lettie Krey prosecutes this appeal.

This appeal involves almost entirely investigation of facts. The questions of law presented are already well settled. The presentation of these two cases on these appeals and the argument by counsel for appellants are painstaking and very able; but it must be added that they are also unique, and for the most part,

SULLIVAN V. BOARD OF SUPERVISORS.

scarcely warranted under the record that confronts counsel in these cases. Bitter criticism and attack are made upon everything that was done in this district. An engineer by the name of Fordyce furnished practically all the testimony for appellants. Fordyce denounced in his testimony the whole plan of the district and the improvements constructed, the classification of lands for assessment of benefits, and the assessments.

II.   Appellants attack the assessment on the ground that it was irregular and illegal, because the civil engineer who served as a member of the commission to assess benefits was the same engineer who planned and constructed the district, and was, therefore, interested therein, and not qualified, as provided by law, to act on the commission and assess benefits; and that the appellants have been prejudiced thereby. Such objection is not well founded, even if we could consider it at this stage of the proceedings. The engineer, R. H. Fuller, was not "interested therein" in any pecuniary way, and was not disqualified. *Smedley v. Kirby,* 120 Mich. 253 (79 N. W. 187); *Chicago, B. & Q. R. Co. v. Kellogg,* 54 Neb. 138; *McGrath v. People,* 100 Ill. 464.

1. DRAINS: assessments: personnel of commission.

Nor do appellants claim that Engineer Fuller had any pecuniary interest in the district, nor that he was related to any party whose land is affected. The objection of appellants to Engineer Fuller as a member of the commission, as we understand counsel, is that it is fundamentally wrong to allow the engineer of a district to become a member of the assessment commission, because of the partisan interest that he may have in the construction of the improvements in the district in accordance with the designs that he has made. Counsel argue that the engineer dominates the commission, not only because of his training and ability, but because he has the qualifications and technical information upon which the assessment must be made, and the other members naturally defer to his judgment and opinions. We can scarcely treat the objection made to the engineer seriously, as a legal objection. It is more in the nature of a criticism of the statute, which plainly provides for the appointment of a civil engineer. It is no violation of the statute to appoint the engineer who laid out the district. In fact, such engineer is usually appointed on the commission, and wisely so, because of his knowl-

edge and familiarity with the lands and conditions in the district, acquired before he goes to the task of assessing benefits.

III.   Appellants also attack the plan followed of arriving. at assessment benefits.   The commission took the actual cost of the improvement, with the addition of $1,000 to cover overhead charges, as the amount of money to be raised, and from this amount deducted:

2. DRAINS: assessments: method of classification.

(a)   The amount assessed against the highway.

(b)   $194 raised on certain lands for relief of overflow.

(c)   The amount that would be raised by direct benefit of assessment on lands traversed by tile, at 15 cents per linear foot, except that 10 cents per foot was charged because one stretch of lateral tile was laid parallel to a line of tile already privately installed.

(d)   Then all the lands in the district were classified on the basis of swamp 50, wet 40, low 20, high 1; and when these classifications had been made on all the 40's, then the number of acres of swamp, wet, and low was reduced to equivalent "high acres," making 9,230 units, or substantially $1.00 per unit as the balance of the money necessary to be raised over the district.

(e)   The grading of each 40-acre tract and meandered tract on the basis of 100 for the highest was then made, computing in proportion that each assessment bore to the highest 40 in the district.

Appellants do not object to the mode of classification on the basis of swamp, wet, low, and high lands; but they claim that the surveys made by the commissioners were not accurate, and that, on appellants' land, the areas of swamp, wet, low, and high lands found and returned by the commissioners are erroneous; and they present what they claim to be correct surveys, which differ somewhat from the classification made by the commissioners.   Appellants do not attempt, in their evidence, to show that the method of computation used by the commissioners was erroneous.   The plan of classification and method of computation adopted by the commissioners are not contrary to the statute. They are in harmony with the statute, so far as the statute points out a procedure for such purpose.   Appellants, in presenting what they claim to be a correct classification of appellants' lands,

followed the same method used by the commissioners: that is, they classified on the basis of swamp, wet, low, and high land, but found different areas of such kinds of land, but not substantially different. We think the surveys and classifications made by the commissioners were substantially correct, and not prejudicial to appellants. The classification of land other than the land of appellants is not attacked. No classification of any lands other than that of appellants was made and presented by appellants.

IV. Appellants complain that the improvement in the district, as planned and constructed, designedly and erroneously diverts the water from its natural course, and by such plan decreases the value of the improvement for tileage or drainage purposes, as to appellants' land, and destroys the outlet privileges, submerges the tile outlet, increases the overflow and seepage, and wrongfully makes a dumping ground of the Krey land, increasing the burden thereon, without any corresponding benefit; and that the plan in diverting the water out of its natural channel and shortening the course has required a method of construction that is excessive in cost and insufficient in operation through the Sullivan and Krey lands, thereby increasing the burdens thereon, without corresponding benefit, and has reduced the benefit from the tile and lessened the special benefit from the improvements to the Sullivan and Krey land to such an extent that the proposed assessment thereon is greatly in excess of the actual benefit from the improvement, as compared with the benefits received from the improvement by other lands in the district; and that for such reason the assessment spread against the lands of appellants should be substantially reduced.

<div style="margin-left:2em"><small>3. DRAINS: assessments: nonentertainable questions.</small></div>

Appellants, of course, are too late with such criticisms and objections. Our drainage laws provide for departing with the drainage improvement, such as the main drainage tile in the instant cases, from the course of the natural flowage of the water, or the natural watercourse. Counsel for appellants, we think, well know that such objections cannot be considered on this appeal on their merits, but they strenuously insist that it was a grievous mistake to divert the drainage from its natural course and cut through some high ground to reach the outlet in a shorter dis-

tance, and thereby shorten the length of the main drainage tile. Engineer Fuller in his report states why the water was taken from the natural course at Station 34, in these words:

"The reason for doing this is to shorten the line and increase the fall per station near the outlet. Along the natural course of the water from Station 34 through the Hughes land there is but one pond, and that has not a natural outlet; so there would be but little land to pay for the extra cost of following the swale, which has for nearly the whole distance a channel deep enough for tile outlets."

Thus it appears that the engineer thought it inadvisable to carry a drain through the natural outlet. To have carried the drain around through the natural course of flowage to the natural outlet would have required the construction of a main tileage drain for more than one and one-half miles in length, to have reached the point in the creek that is reached by the county tile and the short open ditch at the end of it. The main tile would have been, from Station 34, 8,920 feet long, around in the natural waterway, instead of 3,400 feet actually constructed. Counsel have strenuously urged that the main tile was laid through the high ground directly to the outlet for the purpose of providing an outlet to the lands north of appellants' lands. We think this contention is not borne out by the record. The lands above would have been afforded good outlet along the natural waterway around through the Hughes land. It seems to us that appellants were benefited by the main tile, which went across and drained the big slough, containing 25 or 30 acres, on their lands. It appears to us that the cut-off through the divide above plaintiffs' land was not only advantageous, but necessary, to drain the big basin on appellants' lands. It was a community project, and the lands above should contribute to the cost of the tile below Station 34, and as we understand the record, they do. As we gather from the record, the drainage of the big slough or pond on appellants' lands was the controlling feature in laying out the main tile from Station 34 directly down through that basin.

Appellants complain that the cost of the improvement was excessive, and that the assessments on their lands, because of the expensive construction, should be reduced. As we understand

appellants, they claim that the large slough on their land should have been drained to the southwest, through the Parmenter land, and the Parmenter land also drained to the southwest, which could have been done with less cost. Assuming that the plan of drainage now suggested by appellants would have been better than the plan adopted, still such matters inhere in the original establishment of the improvements in the district, and relief cannot be afforded on these appeals. No good reason appears why, if the mistakes claimed by appellants were made, appellants should be afforded relief in the way of reduction in their assessments, and the assessments in the balance of the district be left as they are. Appellants assert that they were discriminated against; that the whole plan of the district and the improvements therein was designed for the especial benefit of the lands lying north of appellants' lands, and the Parmenter land, lying west of appellants' lands. No fraud is alleged. If the complaints of appellants concerning such matters are well founded, they amount only to criticism of the judgment of those who are responsible for laying out the district and planning the improvements. Margaret Sullivan and her husband, Patrick Sullivan, signed the petition for the erection of the district and the construction of the improvements.

. V. Appellants' harshest criticism, perhaps, is directed to the submerged outlet. The tile outlet is located about 220 feet north of the creek on the Krey land, in the extreme south end of the district. Testimony offered by appellants tends to show that the ditch from the outlet down to the creek, at the time of the trial, was tramped full of dirt, and was not effective to carry off the water. It was disclosed by the testimony of the contractor that the outlet was not yet completed, and that it was necessary to build a bulkhead and clean it out down to the creek. There would seem to be no reason why the outlet might not be made efficient. Submerged outlets, like the one planned, are not uncommon, and work satisfactorily, especially when the tile line has a good head. In this improvement, the outlet tile has a good fall, a little over five feet to the mile. This would seem to be a good grade, even for an open ditch, and an excellent grade for tile. Three engineers were produced by the county, and they testified to the

4. DRAINS: assessments: unauthorized reduction.

efficiency of the entire improvement in the district, and especially to the efficiency of the outlet when completed. Campbell, engineer, testified:

"I have examined the design of this district, the plat, profile, the fall and size of the tile, and I think it will prove efficient. It is laid out according to the standard rules used by engineers."

These engineers also say that they think the system was planned in the most feasible and practical way. If the outlet is not efficient, it can be made so. Neither the trial court nor this court has any right at this time to reduce the assessment because of damages accruing at the outlet. Only a damage commission could do that. It is possibly true that the outlet, in the condition it was in at the time of the trial, did not serve the lands immediately east in a satisfactory way. No assessment was levied on any of this land in the outlet to pay for benefits.

Appellants argue, with good logic, that the result of the direct course of the main drain is that the flow of the water has been increased and accelerated, or taken more quickly down through the main tile, and that this has congested, to some extent, the water about the outlet on the Krey land. They further argue that, if the water had been taken around in the natural course of drainage, the Krey land surrounding the outlet would not have been flooded, as they claim it now is. If we were to agree with appellants on this point, it would be merely academic. The plan of drainage cannot be changed in these proceedings. The lands of appellants are servient lands, and are necessarily impressed with that disadvantage.

Appellant Sullivan signed the petition for the establishment of the drainage district, and in the petition asked for the location of the improvements, the main tile drain and the laterals, substantially where they are constructed. Patrick Sullivan, as a witness, makes a feeble attempt to say that he did not understand the plan of improvements, and that, when he signed the petition, it was blank. But such contention is not borne out by the record. It conclusively appears that Mr. Sullivan was on the district with the engineer and several neighbors, and that the plan of drainage was talked about among them and explained by the engineer, and that Mr. Sullivan was before the board of supervisors at the

hearings concerning the district and the improvements therein to be constructed.

Witness Fordyce made a classification of the several tracts of the Sullivan and Krey lands, and presented the same in his testimony. His classification, made by inspection and survey, varies somewhat in the acreage of swamp, wet, low, and high lands from the classification made in the same manner by the commission. However, Fordyce made no classification of the lands in the balance of the district. Also, Fordyce arbitrarily, without any sound reason given, adopts a proximity factor 70, instead of 100, and applies the factor 70 to the 40's tributary to the main tile below Station 34, where appellants' lands are situated; and thus produces a reduction of the assessment of 30 per cent on those lands. Fordyce attempts to defend this reduction on the ground that the Sullivan and Krey lands did not need an expensive improvement, because they were already near the outlet, and drainage for such lands could have been constructed by a much cheaper improvement than was adopted. The reasons given by Fordyce are manifestly not sound.

Appellants complain that the plan adopted, at variance from the natural course of drainage, was essentially for the benefit of the landowners in the north end of the district, and is not materially beneficial to appellants, and casts upon them an inequitable burden of assessment. Defendants say that the lands above said Station 34, which are directly tributary to the main tile, and which were assessed the same as the lands below, on a proximity factor of 100, would have had good outlet in the natural channel, as shown by the elevations; and that it was the Sullivan and Krey lands which could not secure such outlet; and that it was for the benefit of the Sullivan and Krey lands that the cut-off was made through the divides; and that the Sullivan and Krey lands should bear the same proximity factor for the main tile as the other lands. The evidence shows that the cost of the main tile through the big slough up to Station 34 was $3,951, while the assessment on appellants' lands is $2,928, showing an excess cost over the assessment of $1,023.

Appellants offer, by the testimony of Fordyce and other witnesses, comparisons of assessments of appellants' lands with a few other tracts, but not of all of the other land in the district.

The conditions existing on other lands are not shown in either the Fordyce classification or in the comparisons testified to, and are of little value. We are constrained to say that appellants are attempting to obtain relief which, if they were ever entitled to receive it, should have been obtained at the time of the establishing of the district and the locating of the improvements therein.

Appellants insist that their lands have been burdened with all the troubles, errors, irregularities, and inequalities, as well as an unjust and unreasonable burden of assessment; that their assessments should be reduced for that reason. We must assume that appellants do not demand direct remedy of the claimed irregularities complained of, but only attempt to prove that the plan of drainage and the improvements adopted in the district were wrong, and discriminated in favor of the upper end of the district and against the lands in the south end of the district; that the improvement does not give adequate outlet to the Krey and Sullivan lands; that the classification of the Sullivan and Krey lands was erroneous; and other matters for the purpose of convincing that assessments on appellants' lands should be reduced. The assessments were regularly made, by a legally constituted commission, and considered and passed upon by the board of supervisors, and then, on appeal, were passed upon by the district court. The cases were ably tried in the district court, as they are in this court. The burden is on appellants to show error, inequality, and inequity in the assessments, such as to entitle them to relief. We think they have not sustained such burden. We have repeatedly announced that we will not interfere with an assessment made by the benefit commission, and passed upon by the board of supervisors, and then by the district court, except upon a clear showing of prejudicial error therein. *Jackson v. Board of Supervisors*, 159 Iowa 673; *In re Hill Drainage Dist.*, 162 Iowa 182; *Chicago, R. I. & P. R. Co. v. Wright County Drainage Dist.*, 175 Iowa 417; *Chicago G. W. R. Co. v. Board of Supervisors*, 176 Iowa 690.

We think that the district court gave appellants all the relief they were entitled to. We find no reason to disturb the

decrees entered by the district court, and they are affirmed.—
*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.