CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant, v. BOARD OF SUPERVISORS OF MONONA COUNTY et al., Appellees.

**DRAINS:** Establishment—Interested Supervisor. Drainage improvements established by the *unanimous* vote of the board of supervisors are not rendered illegal by the fact that *one* of the supervisors was financially interested.

**DRAINS:** Assessments—Engineer as Commissioner. The engineer who has had charge of the improvement from its inception is not disqualified from serving as one of the commissioners to classify the benefited lands and to assess the benefits.

**DRAINS:** . Establishment—Inconsequential Changes. Changes by the board of supervisors in a lateral which is of minor importance in the scheme of improvement will not be held to deprive the board of jurisdiction.

**DRAINS:** Assessments—Railroad Right of Way. An assessment against a railroad right of way for benefits consequent on a public drainage improvement is necessarily a matter of fair approximation. Record reviewed, and held to show an excessive assessment.

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

JUNE 22, 1923.

REHEARING DENIED SEPTEMBER 28, 1923.

APPEAL from a drainage assessment.—*Modified and affirmed.*

*Charles E. Underhill* and *Adams & Hise,* for appellant.

*John P. Organ* and *George E. Allen,* for appellees.

STEVENS, J.—Soldier River Drainage District No. 24 is located in Monona County, and comprises 7,220 acres of agricultural lands, and includes about 12 miles of the roadbed and right of way of the Chicago & Northwestern Railway Company, appellant herein. Soldier River, prior to the construction of the improvement in question, was a very tortuous stream. The improvement contemplated the straightening of the stream, thereby reducing the flow of the water from 22 to about 12 miles, and materially increasing the fall and capacity of the waterway. The valley lies between ranges of hills, and is a narrow one. The land is rich and fertile, and, if relieved from overflow, which was formerly of frequent occurrence, will become very valuable for agricutural purposes.

The complaint of appellant is that the assessment laid against its property is inequitable and grossly excessive. The improvement cost $110,000, practically 21 per cent of which was laid upon the county, on account of the improvement of the highways within the district, and upon appellant herein. An assessment of $10,000 was levied against the property of appellant: that is, practically one tenth of the total cost of the improvement.

I. We will first dispose of appellant's contention that the board acted without jurisdiction in approving the classification of the lands and property included within the district for assess-

1. DRAINS: establishment: interested supervisor.

ment, and in making the levy against the same, for the reason that the engineer who served on the board of commissioners to classify the lands also made the preliminary and permanent surveys and superintended the construction of the improvement, and that one member of the board of supervisors and his sister owned considerable tracts of land subject to assessment in the district. No claim is made by appellant that the lands owned by the member of the board of supervisors referred to, or by his sister, were inequitably classified or

assessed.  The vote of the board was unanimous upon all questions affecting the classification and assessment of the property of the district for the cost of the construction of the improvement.

So far as we can gather from the record, there is nothing shown therein in any way discrediting the good faith or integrity of the engineer.  The contentions of appellant as to both the 2. DRAINS: assessments: engineer as commissioner. engineer and the alleged interested member of the board of supervisors have been recently adversely passed upon by this court.  *Nervig v. Joint Boards of Supervisors,* 193 Iowa 909; *Sullivan v. Board of Supervisors,* 193 Iowa 739.  What is said in the above cases fully answers the argument by counsel, and will not be here repeated.

There was a change of one lateral established as a part of the system.  It is urged that this change was unauthorized, and that the board exceeded its jurisdiction in this respect.  The 3. DRAINS: establishment: inconsequential changes. lateral involved a minimum cost, and, whether the change was authorized or not, the action taken did not affect the jurisdiction of the board to make the assessment, and entered little, if at all, into the question of an equitable apportionment of the cost.

II.  It is further argued on behalf of appellant that, if its contention is right, that the board of supervisors acted without jurisdiction in making the assessment, because of the interest of 4. DRAINS: assessments: railroad right of way. the engineer and one of the members of the board, the usual presumption in favor of the action of these officers should not be allowed, in passing upon the assessment complained of.  The strength of the presumption which obtains in favor of the action of the officers having jurisdiction of drainage matters must necessarily be varied somewhat by the facts and circumstances of the individual case.  The opportunity of the commissioners appointed to classify agricultural lands in 40-acre tracts for assessment, to ascertain the relative benefits thereto, and of the board of supervisors to view the premises before passing upon a proposed classification, must necessarily be given great weight in reviewing any classification or assessment thus made.  The primary purpose of drainage is the improvement and reclamation of lands used for agricultural purposes.  No accurate basis exists for the comparison of agri-

cultural lands and the roadbed and right of way of a railroad company. In reviewing any assessment of benefits against a railroad company, the superior advantages of the commissioners in ascertaining and fixing the relative proportion of benefits to land and other property cannot be disregarded by this court. Possibly, in some cases, the presumption in favor of such classification after same has been approved by the board of supervisors may be somewhat less conclusive in character, where the question is as to the relative aggregate benefits to agricultural lands and a railroad right of way and roadbed, for the reason that the classification does not depend upon the relative character and improvement of similar contiguous tracts. The question in this case is almost wholly one of fact.

The evidence without dispute shows that substantial benefits will accrue to appellant by reason of the improvement. As is frequently true in cases of this kind, the evidence is confined to, and comparisons based largely upon, maximum flood conditions, which may or may not be wholly eliminated by the improvement. Making allowance for this fact, it must, nevertheless, be conceded that the water level will be reduced and maximum flood conditions materially relieved by the improvement in question. The evidence shows that a flood in 1912, the highest ever known in that vicinity, washed out a portion of appellant's track and seriously damaged its roadbed in various places. Other floods ran over the track and caused more or less damage to the roadbed. The evidence, however, shows that much damage to appellant's roadbed is caused by water from the hills. Appellant has 24 openings, mostly trestle bridges, through its roadbed in the district. These openings were designed to permit the escape of surface waters from the hills into the old Soldier River. The new ditch, which at some points is nearer to, and at others farther away from, its right of way, provides a better outlet for the water coming from the hills, and if laterals should be constructed and maintained at the openings in the roadbed, the increased efficiency of the outlet will materially facilitate the escape of the hill waters. The great cost of constructing and maintaining laterals in a large measure, however, negatives any benefit that would accrue to appellant on account of the improved outlet for the hill water. The evidence also tends to

show that the silt coming from the hills would so fill up the laterals as to require constant care and expense in keeping them open. The fall from the right of way to the original channel is sufficient for the escape of surface water accumulating thereon.

The evidence shows that large sums have been expended by appellant in elevating its track at several of the openings therein, for the purpose of protecting it against the floods coming from the hills. The evidence showing the practical effect of the improvement is somewhat meager. It does show, however, that prior maximum flood conditions will be reduced, that ordinary overflows will be largely eliminated, and that the farm lands will be materially improved for cultivation. Appellant will share more or less directly in these improved conditions.

Any further review or discussion of the evidence is unnecessary. We have read and reread the record with care. The case is quite like many others that have been reviewed and decided by this court. There is no recognized rule for accurately determining to just what extent a railroad right of way and roadbed will be benefited by the ordinary drainage improvement. An approximation only is possible. Benefits accruing to a railroad company by a drainage improvement which reduces the water level and prevents the recurrence of floods which overflow its tracks and impair its right of way are direct, and may be ascertained with reasonable accuracy. To what extent maximum flood conditions will disappear in the Soldier River valley as the result of the improvement in question must be determined by experience. So far as the evidence throws light upon the matter, it tends to show that the reduction in distance and the increased capacity and velocity of the flow will result in the carrying away of all ordinary floods, without materially damaging growing crops. The indirect benefits to the property of appellant are more or less theoretical and speculative in character. Assuming that the improvement will substantially produce the results claimed for it by the engineer who made the surveys and recommended its construction, and disclosed by present conditions, it seems to us that more than 79 per cent of the benefit received therefrom should be laid against the 7,220 acres of agricultural lands in the district. The average assessment against these lands is approximately $10 per acre,—the

maximum, $33.28. We are always reluctant to interfere with the classification adopted by the board; but, as already stated, we are convinced that the assessment complained of is inequitable, and imposes a larger percentage of the cost of the improvement upon appellant than it should bear. The witnesses differed widely in their testimony as to the extent to which appellant's property will be benefited. The highest estimate of any of appellant's witnesses was $5,277; the lowest, $5,000. The basis upon which these witnesses arrived at their conclusion is somewhat more definite than that assumed by the engineer in charge of the improvements and the other experts who corroborated his testimony. The matter is never wholly free from doubt.

Because of some fault of the contractor's, appellant suffered damages to its property during the construction of the ditch, to the extent of $6,000. It is contended by counsel that the assessment should be reduced to some extent on account of these damages. We know of no sound reason or authority for charging the default of the contractor against the district. The controversy, if any, must be between appellant and the contractor.

Without further review or discussion of the evidence, it is our conclusion that the assessment levied against appellant should be reduced $2,500. It will be so ordered. The finding and judgment of the court below, as thus modified, is, in all other respects, affirmed.—*Modified and affirmed.*

PRESTON, C. J., WEAVER and DE GRAFF, JJ., concur.