CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant,
v. BOARD OF SUPERVISORS OF KOSSUTH COUNTY et al.,
- Appellees.

**DRAINS:** Assessments—Presumption. An assessment made by the as-
1    sessment board and confirmed by the district court carries a strong
presumption of correctness.

**DRAINS:** Assessments—Railroad Right of Way. A comparison of the
2    assessment on farm lands per acre with the assessment on a railroad
right of way per acre furnishes no necessary basis for determining
the equitableness of the latter assessment.

Headnote 1:  19 C. J. p. 739.  Headnote 2:  19 C. J. p. 730.

*Appeal from Kossuth District Court.*—B. F. COYLE, Judge.

DECEMBER 11, 1924.

REHEARING DENIED MARCH 21, 1925.

THE board of supervisors levied an assessment for benefits in the sum of $1,250 against the property of appellant, as bene-fits accruing to about three and one-half miles of its right of. way and property within Drainage District No. 166. The company appealed to the. district court, where, after a full trial, the assess-ment was confirmed. Plaintiff appeals.—*Affirmed.*

*W. B. Quarton, J. G. Gamble, R. L. Read,* and *R. N. Lynch,* for appellant.

*T. P. Harrington,* for appellees.

PRESTON, J.—The case has been well presented, and the trial court appears to have given the case careful consideration. The question is largely one of fact. There is a conflict in the testi-

1. DRAINS: assess-ments: presump-tion.

mony, not only as to the benefits and the proper amount of assessment therefor, but as to water conditions and other matters bearing upon the question. Appellant concedes that it should be assessed $420, and that this would be a proper assessment; while the evidence on behalf of appellees is that the property was benefited $1,250. There is no middle ground, and under the evidence there is no basis for any other assessment; so that it must be one or the other. The presumption is in favor of the amount fixed by the assessing board. The rule is that this court will not interfere with an assessment made by the assessing boards and then by the district court, except upon a clear showing of prejudicial error therein. *Chicago G. W. R. Co. v. Board of Supervisors,* 176 Iowa 690; *Sullivan v. Board of Supervisors,* 193 Iowa 739, 749, and cases. We have also held in a number of cases that there is no recognized rule for accurately determining to just what extent a railroad right of way and roadbed will be benefited by the ordinary drainage improvement, and that an approxima-tion only is possible. *Chicago & N. W. R. Co. v. Board of Super-visors,* 196 Iowa 447, 451. The case comes to us much like other similar cases. We shall refer to the evidence and claims of the parties only in a general way. To attempt to reconcile the con-flict or point out the inconsistencies and contradictions and other

matters bearing upon the weight to be given to the evidence would be a hopeless task, would unduly prolong the opinion, and would serve no useful purpose.

It appears that, about 1905, the board of supervisors established Drainage District No. 3 in said county. It contained about 23,000 acres, and cost about $90,000. Original District 3 included about three and one-half miles of appellant's right of way, and all that portion of the right of way which is included within the present district. The assessment against the appellant at that time was $75. About 1914, Subdistrict No. 3 of the original District 3 was established. This was a small district, and was designed only for the purpose of constructing one tile line, which extended across appellant's right of way. It was a 16-inch tile. The same or a portion of appellant's right of way was included within District 3 of 3. 3 of 3 was an improvement within the limits of the old 3. The assessment against appellant for the construction of 3 of 3 was $50. Original District 3 contained a large amount of open ditch work. Both the old District 3 and District 3 of 3 contained a number of tile lines. Two were constructed from the open ditch, north of the right of way, south through the right of way, and into the farm lands south. Two others were constructed up to the right of way, but were not continued through it. Original 3 was one of the early drainage projects in the county; the design was poor; the open ditches and the tile lines were too small, and laid on an insufficient grade; and there was not a proper outlet into the open ditch. The outlets of tile lines in the southern portion were submerged, filled with mud, and would not drain land at the time, and after, original 3 and 3 of 3 were constructed. This is not denied by witnesses for appellant. Farther to the north and east, below the original outlet of open ditch in 3, were two other small districts, with their outlet in the same creek channel. The right of way of appellant runs east and west through the extreme south portion of original District No. 3, the southern limits of which are also the southern limits of the present District No. 166. It is shown that, before the establishment of original No. 3, the entire territory was very wet, and much of it was occupied by ponds and potholes, which were filled with surface water for a considerable part of the season.

The right of way is approximately along the water divide. The land abutting on either side, for at least a part of the way, is low, and about the same as the right of way. North of the right of way, including all the territory within the district, the water flows north and east to the river. Immediately south, and in some of the territory north, east, and west of the district, the water flows to the south. The land being flat, the ponds close to the divide had an uncertain outlet, and it was very difficult to afford them proper drainage. Water conditions are described by witnesses for both sides at different times and for different years, and at different seasons of the year. There was a conflict. Appellant's testimony tends to show that the right of way was not as wet as described by witnesses for appellee. There is considerable evidence for appellant that, in the haying season, hay was cut from a considerable portion of the right of way, and so on. The evidence shows that the outlet of the east main of 3 of 3, which crosses the right of way in the southwest part of the district, prior to the establishment of 166, was entirely submerged three and one-half feet below the bottom of the open ditch at its outlet. This is a 16-inch tile line, and the water stood in the tile back across the railroad. The open ditches had partly filled up. The weight of the evidence is that the improvement in 3 had proved inadequate, and had become practically worthless. Such was the situation, briefly described, when No. 166 was established, a few years later. New territory was included. The acreage was 35,000 acres, and 166 included 3, and 3 of 3, and also Districts 58 and 85, and perhaps some other territory north of old 3. The cost was $210,000. There was no tile construction in 166. Three of the main lines and one of the laterals of the open ditch were enlarged and deepened. There was a large amount of earthwork excavation.

We shall not attempt to go into the evidence as to the water conditions and the situation generally. It is enough to say that appellant's testimony tends to show that the right of way was dry; that no extra expense or care was required in the maintenance of the roadbed; that there were no slides, etc.; and that by the establishment of 166 no special benefits accrued to its property. Appellees' testimony is to the contrary. The weight of the testimony sustains appellees' claim.

One of the contentions of appellant, and perhaps the principal one, is that all the special benefits which accrued to its property were obtained either in the construction of the drains in original 3 or 3 of 3, and that it has paid for all special benefits by the two small assessments then made, and cannot, therefore, be assessed anything for special benefits at this time; in other words, that no special benefit over and above the benefits which it had previously received, resulted from the new improvement. We think this cannot be so. Such prior payments do not constitute an adjudication as to benefits accruing in a district which may be afterwards established, of which the other two are only a part. By the two prior payments, appellant paid for the benefits which it appeared to have received at the time such assessments were made,—nothing else. Farm lands and all the lands were originally assessed for benefits which they appeared to receive at that time. The evidence shows that the lands did not receive the anticipated benefits, and that it became necessary to deepen and to widen and extend the ditches and drains. If appellant could claim that it had paid for all the special benefits it received, every farmer in the district could, with as much reason, make the same claim. If this could be done, no one would be left to pay for deepening, widening, and extending the ditches. Owners of new lands taken in could not be charged with the whole cost of deepening and widening the ditches for the benefit of the whole district. This seems to be conceded by appellant; for they say in the record that they "do not claim that any landowner within the district that did not have new land brought in, or rather, all the ones who were formerly in the district, should pay for nothing but outlet, and for no special benefits." Any additional benefits accruing to land or to the right of way may properly be charged thereto, and in the proper proportion; and the question here is, What is the benefit which accrues to the right of way by reason of the No. 166 improvement? We think appellant has failed to show that no new and additional special benefits resulted. In this proceeding, it is asked to pay for something which it never had received before, and which it has never paid. Section 1989-a12, Supplemental Supplement to the Code, 1915, and Section 1989-a18, Code Supplement, 1913, and the several amendments thereto, provide, in

substance, that property shall be assessed in accordance with the benefit actually received, and in proper proportion with all other assessments in the district. This is conceded by appellant in argument. Its expert engineer and witness advances the theory, as an engineering proposition only, that there are three classifications of benefit: first, general benefit; second, actual or common benefit; and third, special benefit. He defines special benefit as a benefit peculiar to railroad property, and states that these benefits would not occur to farm lands, but that some of the special benefits would apply to a public highway. Analyzing the special benefits which might occur to railroad property in a drainage district, he gives his opinion that there was no special benefit to the railroad in Drainage District 166. He points out that these special benefits made include, in many cases, lessened saturation of roadbed, decay of ties, heaving of fences, and washing of fences, bridges, and trestles, reduction of hazard, lessened expense of maintenance, and lessened erosion. We have seen that he is contradicted as to some of these items, and that the weight of the evidence is against him on the fact proposition. Furthermore, the evidence does not show that his theory is one generally adopted by drainage engineers. As applied to this case, his theory has no application. He proceeds upon the assumption that there were no additional special benefits to the right of way. The evidence shows there were additional special benefits; so that his theory is not sustained as a matter of evidence or fact.

Another theory advanced in argument is that, from a comparison with farm lands on an acreage basis, appellant's assessment is too high. On that basis they figure that the assessment against the right of way is about $26 an acre for **2. DRAINS: assessments: railroad right of way.** the number of acres in the right of way. Some of the lower adjacent land was assessed at approximately the same amount. Some of the forties farther away and receiving less benefit are assessed much less. There are about 26 acres of Federal-aid highway in the district, on which is placed an assessment of $63 per acre. We think it would be unfair to compare the assessment against the right of way with the assessment against the adjoining and adjacent farm lands, acre by acre. The statute requires that the assessment against

farm lands shall be made in 40-acre tracts; but we all know that not all of the 40-acre tract needs the drainage ditch, and that only a part is slough, or too wet for cultivation. If the amount assessed against a 40-acre tract for the drainage of a few acres of wet land upon it were divided, the amount would be small per acre. If, in a case of this kind, the actual amount of slough or wet land upon any 40 should be computed in acres, and the railway company should insist that such land upon its right of way should be assessed no more per acre than the slough and wet lands out in the adjoining farms, there might be some reason for the contention. But there is no reason for saying that the right of way should be assessed no more per acre than the adjoining farm land, without any consideration either of the actual number of acres upon the one tract or of the other benefits accruing to a railroad roadbed or right of way which do not accrue to farm land.

The arguments have taken a wide range as to the different theories advanced, but we would not be justified in pursuing the subject further. On the whole case, upon a brief summary of the testimony for appellant and the opinion of its witnesses, especially appellant's expert, its evidence tends to show that there were no special benefits accruing to it by the No. 166 improvement, and that the benefits accruing to it are not more than $420. On the other hand, witnesses for appellees who were on the assessment commission, and its consulting engineer, gave testimony and their opinions that the assessment of $1,250 was fair and equitable, and they give their reasons therefor.

Under the entire record, we are of opinion that the trial court properly sustained the findings of the assessing board. The judgment is—*Affirmed.*

ARTHUR, C. J., and EVANS and FAVILLE, JJ., concur.